**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Oscar TORRES, Daniel Narvaez, and
Javier Dario Gomez,
Defendants-Appellants.**

No. 81–5827.

United States Court of Appeals,
Eleventh Circuit.

Dec. 12, 1983.

---

Weiner, Robbins, Tunkey & Ross, William Tunkey, Geoffrey C. Fleck, Miami, Fla., for Torres and Narvaez.

Bruce H. Fleisher, Coral Gables, Fla., Court-appointed, for Javier Dario Gomez.

Stanley Marcus, U.S. Atty., Robert J. Bondi, Jon May, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before KRAVITCH, HATCHETT and CLARK, Circuit Judges.

PER CURIAM:

In granting rehearing en banc, the court vacated the panel opinion in *United States v. Torres*, 705 F.2d 1287 (11th Cir.1983). The submission of the case to the court en banc having since been vacated, 718 F.2d 998, the case has been remanded to the panel for further proceedings.

Upon reconsideration, we reinstate, with minor alterations, those portions of the panel opinion pertaining to the facts of the case, the proceedings below and the claims of appellant Gomez. With regard to appellants Torres and Narvaez, we again reverse and remand. Our opinion now reads as follows:

I

The investigation leading to the arrests of Torres, Narvaez, and Gomez began when a customs agent received confidential information that shipments of marijuana would be unloaded from two boats at Gallagher's Dock in the vicinity of Tavernier, Florida. Agents of the Drug Enforcement Administration, the United States Customs Service, and other police agencies began a surveillance in the vicinity of Gallagher's Dock. Agents kept watch on the area from a Winnebago equipped with radar and night scopes, near Gallagher's Dock, and at various times from a site near Harry's Place Restaurant, located at U.S. 1 and Ocean View Drive.

On March 21, 1981, a large Ford truck was sighted at Harry's Place around 6:00 p.m. The same truck was sighted at Gallagher's Dock around 8:00 p.m. Near midnight, agents spotted two boats on the radar screen. At approximately the same time, near the location at Harry's Place, other agents saw the Ford truck come down Ocean View Drive and turn onto U.S. 1, heading north. The agents followed the truck to an address on Atlantic Street. The agents remained a short distance away to observe all traffic going in the direction of the truck. They observed a brown van and a white car proceed toward the Atlantic Street address. Ten minutes later, the brown van came back from the Atlantic Street address. The agents followed this van to 226 Buttonwood Lane. The agents then returned to the Atlantic Street address where the Ford truck was parked. Additional agents were called in.

Agents entered the property where the Ford truck was located and detected the odor of marijuana about the vehicle. The garage-type overhead door at the rear of the truck was opened, and appellant Gomez was observed standing inside the truck.

Also observed inside the truck were several lemon trees and numerous burlap-wrapped bales that contained a substance later determined to be marijuana. Gomez was placed under arrest. Upon questioning, he informed the agents that he had been guarding the truck for someone else and was waiting until the person who claimed the truck arrived. Gomez later testified that he had no financial or possessory interest in the marijuana found in the truck. Gomez did not have the keys to the truck and asserted that he was not the driver of the truck.

Once Gomez was arrested, agents went to the nearby residence where they were informed that the truck in question belonged to a "Captain Al" who lived on Buttonwood Lane, several miles away. The agents proceeded to Captain Al's home, 226 Buttonwood Lane, where an agent had observed the brown van earlier. The home is located at the end of a street that culminates in a cul-de-sac. On arrival, the agents espied an individual walking toward them from the front of the home. This man was later identified as co-defendant Parker, whose indictment was subsequently dismissed. When questioned, Parker produced identification and stated that two other persons were in the home, but he was not aware of their names. Agents observed the brown van, which had previously been seen at Gallagher's Dock, in front of the home and saw bales of marijuana through the van windows. Marijuana residue, pieces of burlap, leaves and seeds were strewn from the van to the house. Marijuana residue was also observed on the steps going into the house. After placing Parker under arrest, the agents proceeded to the front doorway of the home.

To reach the front door, the investigating agents had to pass through an enclosed entranceway and proceed up a small set of steps.[1] An agent walked into the house and called out: "It's the police. Is there anybody in the house? Would you come where I can see you?" Record, Vol. 4 at 192. In response to this announcement, appellants

Narvaez and Torres presented themselves. None of the agents had a warrant or had received any consent to enter the house.

After entering the house, an agent observed a pile of clothing that appeared to have a leafy residue on it in the living room. The agent also noticed that Narvaez and Torres obviously were freshly showered and were wearing clean clothes. The facts are in dispute as to whether both defendants were immediately placed under arrest. They were, however, advised of their constitutional rights to remain silent and to have counsel. Later, Narvaez requested permission to put on shoes that were in the hallway near the next room. An agent, following him, discovered eight small bales of marijuana in the nearby bedroom.

It was subsequently asserted in an affidavit of Alexander McLaughlin, the permanent resident of the house searched, that the appellants were invited guests on the premises the day before and the day of the search. Neither Torres nor Narvaez had keys to the home. At the time of the entry, which occurred at 1:30 a.m., Narvaez was cooking in the kitchen, and Torres came to the front of the house from the rear of the premises containing the bedroom and bathroom.

## II

Each of the appellants filed motions to suppress the physical evidence. After a hearing the magistrate recommended, and the trial court ruled after reviewing the record, that Gomez had no standing to object to any evidence seized from the truck in which he had been discovered.

At the evidentiary hearing conducted on the appellants' motion to suppress, the magistrate made direct inquiry of the government regarding whether there was any argument with respect to the standing of Torres or Narvaez to challenge the search of the house. The government responded in the negative and stated: "Given the [McLaughlin] affidavit, no, Your Honor."

---

1. At trial, Agent Mateer testified that this front door was open when the agents arrived. At the prior suppression hearing, however, Narvaez had testified that the door was closed.

On the basis of this concession, the magistrate orally announced that Narvaez and Torres had standing to challenge the warrantless search in the home. The magistrate's written report, however, without illuminating the reason therefor, recommended that the motion to suppress as to Torres and Narvaez be denied. Paragraph 7 of the magistrate's conclusions of law states:

The arrests of Daniel Antonio Narvaez and Oscar Torres were lawful and proper. A van loaded with marijuana—the marijuana was visible through the windows of the van—marijuana was in the yard or driveway of the house in which they were—marijuana residue lead [sic] from the van to the house—and marijuana residue was on the front steps of the house. The agents were merely following the scent and the trial. No testimony was offered by them as to their right to be in the house and as to any right of privacy or expectation of privacy. They had an affidavit of an Alexander McLaughlin but Mr. McLaughlin did not appear to submit himself to further examination.

Nevertheless, the defendants answered to the cry of the Agents when they announced themselves and asked, "Is there anyone in the house" (T. 82, 93), and they came out. The arrests of Narvaez and Torres were based upon probable cause and any further search of the premises was based upon what Agent Mateer saw in plain view (T. 82) and what he further saw when he followed Mr. Narvaez into another room to get a pair of shoes. This following was done for security purposes and was proper and lawful.[2]

Due to the lack of clarity in the magistrate's written report, counsel for appellants Torres and Narvaez read it as concluding that they did *not* have standing. The issue was reargued before the district judge, and appellants Torres and Narvaez testified as to their presence in the house.

Upon review of the magistrate's report and recommendation, the district court agreed with the magistrate that the motion to suppress should be denied, but substituted a new paragraph 7 for the one quoted above:

Defendants Narvaez and Torres lack standing to contest the search and seizure of marijuana found in the house located at 226 Buttonwood Lane, Tavernier, Florida, and the brown Dodge van parked adjacent to the house. The Court finds that, based upon their testimony and an affidavit from Alexander McLaughlin, neither defendant enjoyed a legitimate expectation of privacy in either the house or the van, *Rakas v. Illinois,* 439 U.S. 128 [99 S.Ct. 421, 58 L.Ed.2d 387] (1978), sufficient to contest the search of the Dodge van or the house.

Neither the magistrate nor the district court made explicit alternative findings and conclusions concerning whether the warrantless search of the house was constitutional.

III

The right to challenge a search or seizure as a violation of the fourth amendment[3] turns on "whether the person who claims the protection of the amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). *Rakas* shifted the focus of the standing question from whether an individual was an object of a search or seizure to whether the individual's right to privacy in either the place searched or in the repository of the seized evidence was violated by the warrantless search and seizure. This focus requires a determination of "whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." 439 U.S. at 140, 99 S.Ct. at 429, 58 L.Ed.2d at 399.

---

2. The citations refer to the transcript of the suppression hearing.

3. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not

be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. CONST. amend. IV.

■ Appellants bear the burden of establishing that they had a legitimate expectation of privacy in the areas searched. *Rakas v. Illinois,* 439 U.S. at 130 n. 1, 99 S.Ct. at 424 n. 1, 58 L.Ed.2d at 393 n. 1; *United States v. Meyer,* 656 F.2d 979 (5th Cir.1981). Our review of appellants' claims thus entails an assessment of whether, viewing the evidence in the light most favorable to the government, appellants met their burden of proof. This determination of the legitimacy of appellants' claims to privacy from government intrusion requires an examination of all the surrounding circumstances. *Rakas v. Illinois,* 439 U.S. at 152, 99 S.Ct. at 435, 58 L.Ed.2d at 406 (Powell, J., concurring).

### A. Gomez

On appeal Gomez urges that he had a sufficient privacy interest in the truck to invoke the fourth amendment. Gomez argues that a key element in assessing one's legitimate expectation of privacy in an area is the individual's right to exclude others from that area. He contends that he was hired by the truck's owner to secure the marijuana and to remain in the truck with the doors closed. He further argues that he had temporary possession of the property as a bailee, essentially asserting that he was the transferee of the truck owner's right to privacy.

■ As Gomez himself contends, however, the totality of the circumstances must be examined in determining an individual's right to challenge a search or seizure. Gomez testified at the suppression hearing that he had met a man in a coffee shop who hired him to watch over the marijuana. Gomez had no keys to the truck and did not know who was in possession of those keys. Gomez had not driven the truck and claimed no interest, financial or possessory, in the marijuana. All Gomez successfully established was that he hoped to remain in the truck undiscovered and prevent others from entering the truck and seizing the marijuana. The interest Gomez is asserting is quite simply one that the fourth amendment was not intended to protect. These circumstances lead to the conclusion that Gomez did not have a legitimate expectation of privacy in the rear of the truck.

### B. Torres and Narvaez

■ In ruling that Torres and Narvaez lacked standing to challenge the warrantless entry and search of the home in which they were arrested, the district court failed to make findings of fact sufficiently specific to enable the panel properly to review its conclusion of law. Thus we remand to the district court to clarify its order with respect to Torres and Narvaez by making explicit findings of fact within sixty days.

### IV

■ Having sustained the legality of the search and seizure of the truck in which Gomez was found, we must now consider his claim that the evidence before the trial court was insufficient to sustain his conviction. Gomez argues that the government failed to meet its burden of proof in this conspiracy case:

> To prove a charge of conspiracy[,] the government must establish, beyond a reasonable doubt, that a conspiracy existed, that the defendant knew of it, and that he voluntarily participated in it.

*United States v. Lippner,* 676 F.2d 456, 466 (11th Cir.1982) (quoting *United States v. Garcia,* 672 F.2d 1349, 1369 (11th Cir.1982)). Appellant suggests that all the government was able to establish at trial was his presence at the scene of a crime. This alone is not enough to sustain a conspiracy conviction. *United States v. DeSimone,* 660 F.2d 532 (5th Cir.1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1732, 72 L.Ed.2d 149, 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982). Proof of a conspiracy, however, may be by inferences from the conduct of the participants or from circumstantial evidence. *United States v. Ayala,* 643 F.2d 244, 248 (5th Cir.1981).

The jury here may have reasonably inferred, from Gomez's presence inside a truck containing 1600 pounds of marijuana and from the many observations of the agents regarding the location of the truck at various times of day, that Gomez was involved in a conspiracy to distribute marijuana. Although Gomez admittedly appears to have played a minor role in the total scheme, conviction for conspiracy requires no more. *United States v. Wilson,* 500 F.2d 715, 724 (5th Cir.1974), *cert. denied,* 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975).

In reviewing this jury verdict, we must sustain appellant's convictions if, taking the view most favorable to the government, a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982).[4] A review of the record demonstrates that the jury might reasonably have concluded that the evidence established Gomez's guilt beyond a reasonable doubt. Thus, we affirm the conviction of Gomez.

V

With respect to Torres and Narvaez, we reverse and remand for proceedings not inconsistent with this opinion and retain jurisdiction. AFFIRMED IN PART, REVERSED IN PART and REMANDED.

---

4. Decisions of Unit B of the former Fifth Circuit are binding upon this court. *Stein v. Reyn-* *olds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir. 1982).