ERVIN, Chief Judge,
dissenting.
I would reverse appellant’s conviction on the ground that the trial court erred in denying his motion to suppress evidence. In addition to the facts recited in the majority’s opinion, it should be observed that Rodriguez advised the officers that he had been in the exclusive possession of the barn, which contained a bed, hot plate and toilet, and that he had the right to exclude all others with the exception of Houck, the owner, who occasionally delivered food to him. The motion to suppress was granted as to Houck, but denied as to Rodriguez on the ground that the latter lacked standing to object to the search. The state stipulated at the hearing that if appellant had standing, the evidence should also be suppressed as to him.
In defending the denial of the motion to suppress, the state argues, and the majority apparently accepts, relying upon Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), that an individual must show more than that he was legitimately on the premises of .the property searched in order to assert a constitutionally protected expectation of privacy; that he must also demonstrate a subjective expectation of privacy in the area searched, which society is prepared to recognize as reasonable. The Rakas rule of standing represents an adoption in large part of Mr. Justice Harlan’s special concurring opinion in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Although the state agrees that appellant has effectively asserted a subjective expectation of privacy, it contends that his expectation is not one that society, under the circumstances, is willing to recognize as reasonable in that his only intent in maintaining possession of the barn was to guard the marijuana that was found inside it. Such expectation, the state argues, cannot under the circumstances be deemed legitimate.
The applicable decisions of the United States Supreme Court have thus far not adopted either the state’s or the majority’s position. While Rakas repudiated the Court’s prior statement made in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), that anyone legitimately on the premises searched has standing to object to a search, Rakas continues to recognize that legitimate expectations of privacy can have a source outside the Fourth Amendment by reference to concepts of real or personal property law. Thus, “[o]ne of the main rights attaching to property is the right to exclude others, see W. Blackstone, Commentaries, Book 2, ch. 1, and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude.” 439 U.S. at 143, n. 12, 99 S.Ct. 421, 58 L.Ed.2d 387 (e.s.). The Court was careful to point out that although one’s expectations of privacy under the Fourth Amendment need not be exclusively based on a common law interest in real or personal property, “the Court has not altogether abandoned use of property concepts in determining the presence or absence of the privacy interests protected by that Amendment.” Id.
Rodriguez’s purpose in occupying the premises — to guard marijuana — is hardly one that society would normally view as legitimate. Does an illegal purpose, however, necessarily vititate one’s subjective expectation of privacy? The answer, as applied to the circumstances before us, clearly must be that it does not. When the question of standing arises, a trial court is directed to consider how the defendant came about his possession, before the gov *316 ernmental intrusion, not what motivated the defendant’s possession. For example, Katz’s temporary occupation of a public telephone booth for the sole purpose of plying his trade as a bookmaker did not defeat his reasonable, subjective expectation of privacy. Similarly, Jones’s occupation of his friend’s apartment, with his friend’s permission and key, entitled him to legitimate expectations of privacy in the apartment, regardless of what motivated him to occupy it.
The analysis made by the Eighth Circuit Court of Appeals in United States v. Little, 735 F.2d 1049, 1052 (8th Cir.1984), offers guidance as to how a court should determine one’s right of standing to challenge a search when it is asserted that such person had no legitimate expectations of privacy in the area searched:
Obviously the word “legitimate” in the phrase “legitimate expectation of privacy” is being used in a special sense. An agreement to use an airplane to transport illegal drugs, and an undertaking to guard the plane to prevent detection, are by no means legitimate. The cases must be analyzed on the hypothesis that no illegal activity is occurring or contemplated. The illegality comes to light only through execution of the warrant or court order whose validity is the very point at issue. Otherwise Fourth Amendment analysis would be pointless, because motions to suppress are never made in the first place unless evidence of criminality has been seized. So the “expectation” that must be taken as a predicate for analysis in this case is the expectation of any innocent person who has arranged with an owner or lessee to use an airplane.
(e.s.) The point of this discussion, as applied to the case at bar, is that Rodriguez came about his occupation of the premises searched legitimately, by means of an agreement to lease, and, as such, is entitled to be accorded a legitimate expectation of privacy, for the purpose of determining his standing to object to the search.
Justice Rehnquist’s opinion in Rakas has been reaffirmed by later decisions of the Court, see Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), and there is nothing in other opinions of the United States Supreme Court, relating to searches of open fields, which requires a different result than that which we have reached. Both United States v. Knotts, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), and Oliver v. United States, — U.S. -, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), recognize that possessors of residences and the immediately surrounding premises known as the curtilage have reasonable expectations of privacy within such areas, but that no such expectations extend to objects found in open fields. Although ordinarily a barn would be viewed as within the open fields, nevertheless the facts in the case at bar disclose that both the owner and the occupant of the barn were aware that during its temporary occupancy, it would be used to provide shelter for Rodriguez. As stated, the barn contained a bed, a hot plate and a toilet. Given such circumstances, I would conclude that the lower court erred in denying the motion to suppress on the ground of lack of standing.
Additionally, I do not consider that the majority’s reliance upon United States v. Torres, 720 F.2d 1506 (11th Cir.1983) supports the conclusion that Rodriguez lacked standing to object to the search. Torres was simply an extension of the exception to the warrant requirement applicable to vehicles — not structures — first applied by the United States Supreme Court in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The reason for the historical distinction between the two is obvious: Unlike the search of a structure in regard to which a search warrant may be readily obtained, the search of a vehicle or other movable objects can be required without a warrant because the latter, unlike a building, are capable of being quickly moved out of the jurisdiction in which the warrant must be sought. Carroll v. United States; State v. Smith, 193 So.2d 23 (Fla. 3d DCA 1966); Range v. State, 156 *317 So.2d 534 (Fla. 2d DCA 1963). As a result, vehicles are accorded a diminished expectation of privacy due to their inherent mobility, as well as the obvious public nature of vehicular travel. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).
Despite some rather drastic modifications in the law of search and seizure by the United States Supreme Court during the October term, 1983, the Court continues to exact strict adherence to the warrant requirement as to structures used as private residences. See United States v. Karo, 468 U.S. -, 104 S.Ct. 3296, 82 L.Ed.2d 530, 541 (1984):
At the risk of belaboring the obvious, private residences are places in which the individual normally expects privacy free of governmental intrusion not authorized by a warrant, and that expectation is plainly one that society is prepared to recognize as justifiable. Our cases have not deviated from this basic Fourth Amendment principle. Searches and seizures inside a home without a warrant are presumptively unreasonable absent exigent circumstances.
Again, in Welsh v. Wisconsin, — U.S. -, 104 S.Ct. 2091, 80 L.Ed.2d 732, 742 (1984), the Court observed:
It is axiomatic that “the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.” United States v. United States District Court, 407 U.S. 297, 313, 32 L.Ed.2d 752, 92 S.Ct. 2125 (1972). And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest.... It is not surprising, therefore, that the Court has recognized, as “a ‘basic principle of Fourth Amendment law [,]’ that searches and seizures inside a home without warrant are presumptively unreasonable.”
(citations omitted.)
In that the courts have traditionally imposed less compelling requirements for searches of vehicles as opposed to the searches of structures, the Torres case in my judgment offers no support for the warrantless entry into the structure, which at the time of the entry was used by Rodriguez as a residence.
At any event, I would observe that the facts in Torres are clearly distinguishable from those in the present case. It is true that in Torres the defendant who was arrested inside the truck had the same purpose in mind as the defendant in the case at bar: to guard marijuana; however, I would also observe that the temporary occupant of the truck had no keys to it, did not know who was in possession of the keys, and had not driven the truck. Thus there was no showing that the defendant had come about his possession of the vehicle legitimately. Given these additional facts before it, the Torres court correctly concluded that the occupant of the truck had no legitimate expectation of privacy in the invaded place which society would recognize as reasonable. On the other hand, the appellant in the case on review, as previously stated, had occupied the barn for three days before the warrantless entry under a lease agreement with the owner, and in fact, with the knowledge of the owner, had used the barn as a temporary residence. I therefore fail to see how Torres can serve as authority to deny standing to one who obtained his possession of the premises with the consent of the owner.
In that the state failed to demonstrate the existence of any exigent circumstances which would have permitted the seizure of the contraband without a warrant, I remain of the view that the judgment of conviction should be reversed with directions that appellant be discharged from custody.