**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Paul McCormick DUFF,**
**Defendant-Appellant.**

**No. 82–5668**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

June 24, 1983.

R.E. Fernandez, Tampa, Fla., for defendant-appellant.

Judy S. Rice, Asst. U.S. Atty., Tampa, Fla., for plaintiff-appellee.

Before HILL, KRAVITCH and HENDERSON, Circuit Judges.

PER CURIAM:

On December 21, 1981, a five count indictment was returned by the Tampa, Florida grand jury charging Paul McCormick Duff, Franklin D. Pennington and Robert Maguire with one count each of conspiracy and four counts each of mail fraud. Defendant Maguire pled guilty to the charges pursuant to a plea agreement. In April, 1982, trial commenced for defendants Duff and Pennington. A jury returned a verdict of guilty on all counts pertaining to defendant Duff who subsequently filed this appeal.

## FACTS

In 1980, the United States Veterans Administration entered into a contract with Santa Fe, Inc. which provided that Santa Fe would serve as the general contractor for the construction of the Bay Pines Veterans Administration hospital in Pinellas County, Florida. In June of 1980, Harrison

Electrical Constructors, Inc. [hereinafter Harrison] entered into a subcontract with Santa Fe for the mechanical and electrical work at Bay Pines. Harrison subsequently entered into another subcontract with Yeargin Construction Company, Inc. [hereinafter Yeargin] for the supply of, among other things, insulation heat shields for use ·at Bay Pines. Robert Maguire was the project manager for Harrison while Bay Pines was under construction. Maguire's duties included administrative functions, overseeing the installation of equipment, processing billings, purchasing, negotiation of subcontracts and the general overall responsibility to Harrison for the project. Mr. Duff, appellant in this case was employed by Yeargin. The subcontract between Yeargin and Harrison was negotiated by Duff and Maguire.

In the original agreement between Yeargin and Harrison, it was not anticipated that Yeargin would supply the heat shields necessary for the project. However, the appellant informed Maguire that he had a side company (F & P Industries),[1] apart from Yeargin, which could produce the heat shields and that Maguire would be given a participation in the profits of this transaction if he would purchase the heat shields through Duff's company. Maguire agreed to the proposal. Appellant subsequently informed Maguire of a way to make even more of a profit on the heat shields sale. Appellant proposed that Yeargin would supply the heat shields, yet F & P would bill Harrison for the heat shields which Yeargin had supplied. The cost of the heat shields would be approximately $30,000.00. Maguire would only have to approve the invoice sent by F & P. The profits from this venture would be split between the three original defendants, Duff, Pennington and Maguire.

Maguire did issue a purchase order on behalf of Harrison to F & P. The heat

shields arrived at the Bay Pines construction site with a bill of lading from Yeargin. Maguire informed appellant of the arrival of the heat shields and requested appellant to send him an invoice from F & P. On November 15, 1980, an invoice was sent by mail from appellant's side company, F & P, to Maguire.[2] Maguire approved the invoice and sent it to the Harrison headquarters in Greenville, South Carolina. A check for the full amount of the invoice was sent to F & P and appellant in turn wrote a check on the F & P account for $10,000.00 payable to "M & S Enterprises," and sent it to Maguire. Thus, Duff's company, F & P, obtained payment from Harrison for the heat shields it had not supplied and for which it was entitled to no payment, and the proceeds were divided between the original defendants.

### I. Sufficiency of the Evidence

■ At the close of the evidence, appellant made a motion for a judgment of acquittal which was denied. Appellant contends this motion should have been granted because there was insufficient evidence to support a verdict of guilt on all of the counts. In reviewing a claim of insufficiency of the evidence, this court must view the evidence in a light most favorable to the Government drawing all reasonable inferences ·therefrom. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), *United States v. Spradlen*, 662 F.2d 724 (11th Cir.1981), *United States v. Perez*, 648 F.2d 219 (5th Cir.), *cert. denied*, 454 U.S. 1055, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981). Additionally, the applicable standard of review for a sufficiency of the evidence challenge states:

It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond

---

1. F & P Industries stands for Frank Pennington and Paul Duff.

2. Upon receiving the invoice, Maguire called the appellant and advised him of Harrison's discount policy in which Harrison would pay

the entire bill by the 10th of the following month if the vendor offered a 2% discount. Accordingly, the appellant mailed a second invoice to Maguire offering the 2% discount.

a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *cert. granted, aff'd,* —— U.S. ——, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

The evidence presented at trial established that Yeargin manufactured and supplied the heat shields for the Bay Pines project. The instructions to manufacture these shields came from the appellant. Yeargin shipped the shields to Harrison. Yet, F & P Industries, the appellant's side company sent Harrison an invoice for the $30,000.00 worth of heat shields supplied by Yeargin. Upon payment of the invoice by Harrison to F & P, appellant wrote a check to "M & S Enterprises" and sent it to Robert Maguire noting on the check that payment was for "engineering, design and consulting services."

Maguire testified that he and the appellant had devised this kickback scheme which effectuated a fraud on Harrison and Yeargin. Additionally, Mr. Duff had told an F.B.I. agent who interviewed him prior to the arrest, that his company had sold $30,000.00 worth of heat shields to Harrison which he had purchased from another company. When the agent asked Duff from what company he had purchased the heat shields, the appellant said he could not remember their name or the location of the company, but he was sure that Yeargin had not manufactured the heat shields.

■ Viewing the evidence in a light most favorable to the Government, we find that there was sufficient evidence to support the verdict. Although the appellant's version of the facts differs from the testimony of Maguire and others, the jury had sufficient evidence to conclude the appellant was guilty of all of the charges.

## II. Admissibility of the Trip

On redirect, the Government elicited testimony from Maguire regarding a trip that Maguire and Duff planned to take together with Maguire's new wife and Duff's girl friend. Maguire testified that after he had solicited a bid from Yeargin, Duff had told him that they should plan a trip and that "Yeargin will foot the bill for me and you and your wife." (Record on Appeal Vol. 3 at 165). Maguire planned the trip, but at the last moment he was unable to attend. The entire trip was paid for by the appellant.

The appellant objected to the admission of this evidence contending it was evidence of other criminal acts for which the appellant had not been indicted. The trial court overruled the objection stating the testimony "has to do with the relationship between the parties about which you inquired." On direct, the Government attempted to prove that Maguire and Duff were more than business partners; that in fact they were fairly good friends. On cross-examination, appellant sought to prove just the opposite, that Maguire and Duff had no personal relationship whatsoever. Accordingly, on redirect the Government went into the testimony about the proposed trip to show that Maguire and Duff were close personal friends. There was no suggestion by the Government or by Maguire that payment for the trip by appellant was improper or illegal.

Appellant interprets this evidence as coming in under "other acts evidence." However, the evidence was not admitted to prove other crimes, but rather to demonstrate the relationship between Duff and Maguire. This evidence came in under Federal Rule of Evidence 401 which states:

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

■ Historically, it is the function of the trial court to determine the admissibility of the evidence, and thus, admission of evidence is committed to the sound discretion of the trial court. *United States v. Hearod,* 499 F.2d 1003 (5th Cir.1974); *see also Shale v. United States,* 388 F.2d 616 (5th Cir.), *cert. denied,* 393 U.S. 984, 89 S.Ct.

456, 21 L.Ed.2d 445 (1968). The decision of the trial court to admit relevant evidence will not be disturbed on appeal unless there has been an abuse of discretion or the trial court's determination was clearly erroneous. *United States v. 110 Bars of Silver*, 508 F.2d 799 (5th Cir.), *cert. denied*, 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89 (1975), *United States v. Allison*, 474 F.2d 286 (5th Cir.1973), *cert. denied*, 419 U.S. 851, 95 S.Ct. 91, 42 L.Ed.2d 82 (1974).

█ The relationship between Duff and Maguire was of great importance in establishing the conspiracy. We find no error in the trial court's admission of the testimony surrounding the proposed trip.[3]

### III. Alleged Error in Jury Instructions

#### (a) Co-defendant's guilty plea

The appellant contends that two jury instructions he proposed should have been given by the trial court. The first requested instruction involved Robert Maguire's plea of guilty to the indictment in this case. The appellant asked the trial court to instruct the jury regarding the meaning of a co-defendant's guilty plea. This instruction was not, however, requested at the jury instruction conference. Appellant suggested this instruction for the first time when the judge asked if there were any objections to the agreed upon instructions which had been given. The trial court refused to amend its instruction by adding the appellant's proposed instruction.

█ It is undisputed that a defendant is entitled to have the issue of guilt determined solely on the basis of the evidence against him or her, and not on whether a co-defendant has pled guilty to the same charges. *United States v. Fleetwood*, 528 F.2d 528 (5th Cir.1976); *United States v. King*, 505 F.2d 602 (5th Cir.1974). Because no objection to the lack of this instruction was made at the proper time this court

must review the omission of this instruction under the standard of plain error. *United States v. Berrojo*, 628 F.2d 368, 370 (5th Cir.1980).

Prior to trial, the defendant made a *motion in limine* to prohibit the Government from eliciting any testimony regarding Maguire's guilty plea to the charges in this case. The trial court instructed the Government not to elicit this testimony and also instructed Maguire not to offer his guilty plea during examination. The Government honored the court's instruction and solicited no information from Maguire regarding his guilty plea. However, on cross-examination, appellant's counsel asked Maguire if he had been convicted of a felony. Maguire responded:

A. I pled guilty to a felony before Judge Hodges. I don't recognize the case number as such, but recently, I—I think it was March 22nd of—March 22nd of this year, I pleaded guilty before Judge Hodges.

Q. Would that be March 23rd instead and on March 22nd, did you pled guilty before Judge Carr to two felonies, one in case number 81–00143 and the other one, case number 81–00144?

A. You have the dates wrong. The dates was—the Monday of that week, it was all one day, there were three. AT 9:00 o'clock in the morning, I pled guilty to one count before Judge Hodges—or one incidence before Judge Hodges. At 9:30, I appeared before Judge Carr, and pled guilty. At 1:30 that afternoon, I appeared before Judge Krentzeman and pled guilty to the charges.

Record on Appeal Vol. 3 at 141–42.

After having asked these questions, counsel for the appellant approached the bench and asked the court for a mistrial stating:

Your Honor, in view of the fact that a motion—in view of the fact that a motion in limine was filed specifying this, the

---

3. Appellant suggests that the Government attempted to use this testimony to show that the trip was just another kickback scheme of the appellant's. The Government did attempt to do this through a proposed jury instruction. How-

ever, the trial court refused to give this instruction. Thus, no indication that appellant's payment for this trip was improper ever came before the jury.

effect that the questions were directly posed with the purview of those three cases, and I stated as such, I would ask the Court for a mistrial, based on the express avoidance of Mr. Maguire to go by the instructions given by this court. Record on Appeal Vol. 3 at 142. The Court denied the motion stating:

The motion in limine was directed to the Government bringing out testimony and Mrs. Rice has never mentioned this subject. She has strictly complied with my order.

I do not direct Defendant not to do anything and I did not—I didn't know what was going to be asked him in the context of which you pursued this. I find no prejudice, no—and I find nothing wrong and I deny the motion for mistrial.

If you say you didn't open the door, well, you asked the question and got him started. There was no mention.

. . . .

But, you see, this is not a stop and go procedure. A trial is a search for the truth. You can't have your—as Mrs. Rice said, you can't have your cake and eat it too, or words to that effect.

There is nothing wrong with the truth coming out, which everything that he said is the truth, and it reacts to your benefit. You have got a man who is a witness who's admitted on the witness stand that he pled guilty to three different file—cases, and that's that. I have instructed the jury that your clients all pled not guilty and have a presumption of innocence and I intend to do it again. Record on Appeal Vol. 3 at 143–44.

◼ Appellant now complains that an instruction regarding Maguire's guilty plea to the charges against him in the same case as Duff should have been given to the jury. We disagree. The testimony elicited on cross-examination only demonstrated that Maguire had pled guilty in three instances. There was no mention that Maguire had specifically pled guilty to the charges in the Duff case. The court had already instructed the jury that the defendants on trial involved in this case had pled not guilty.

The judge properly omitted an instruction regarding Maguire's guilty plea. Had the judge given the proposed instruction, the jury would have been made aware, for the first time, that Maguire had pled guilty to the same charges as those against appellant Duff. We commend the district court for its perceptive analysis of the situation. Appellant was attempting "to have his cake and eat it too," but because of the trial judge's awareness, this was not permitted to happen.

### (b) Good faith instruction

The appellant further complains that the trial court should be reversed for omitting a proposed instruction on good faith. The proposed instruction stated:

If the evidence in this case leaves you with a reasonable doubt whether the defendant had a good faith belief that his assertions were truthful and not fraudulent at the time of the alleged mailings, then you should acquit the defendant. Record on Appeal Vol. 6 at 108–09.

The trial court declined to give this exact instruction and instead stated to the jury that:

If you find that any statement or representations relating to one or more of the counts in the Indictment were made or represented by a defendant at a time when such defendant believed them in good faith and honest purpose to be correct, then such statement or representation would not be one upon which a conviction could be based and you should find such defendant not guilty on that particular count.

Both of these instructions have been approved by the Fifth Circuit. The former instruction was authorized in *United States v. Goss,* 650 F.2d 1336, 1344 n. 6 (5th Cir. 1981). The latter instruction was approved in *United States v. Wilkinson,* 460 F.2d 725, 729 (5th Cir.1972). The court in *Goss* gave tacit approval to the *Wilkinson* instruction. *Id.* at 1345.

◼ Although a defendant may request a specific instruction, the court is not

obligated to use the exact wording of the proposed instruction, as long as the words chosen clearly and accurately state the proposition being requested. *United States v. Cox,* 696 F.2d 1294 (11th Cir.1983). If the charge given is a correct statement of the law, if it fairly presents the issues to the jury and it is substantially similar to the requested instruction, a federal judge has great latitude in phrasing the instruction. *United States v. Gaines,* 690 F.2d 849 (11th Cir.1982). The only difference between the proposed instruction and the one given by the court is the exact phrasing used. The substance of both instructions clearly states that a good faith belief by the defendant would mean he was not guilty of the charge against him. We find no error in the record and we

AFFIRM.