**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Nelson ROJAS, Benjamin Morejon,**
**Defendants-Appellants.**

**No. 83–5106**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 31, 1984.

708

Linda L. Carroll, Miami, Fla., for Rojas.

Kenneth E. Cohen, Asst. Federal Public Defender, Miami, Fla., for Morejon.

Stanley Marcus, U.S. Atty., Frederick R. Mann, Linda Collins-Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HILL, JOHNSON and HENDERSON, Circuit Judges.

PER CURIAM:

Nelson Rojas and Benjamin Morejon were jointly indicted for conspiracy to import marijuana, importing marijuana, conspiracy to possess marijuana with intent to distribute, and possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 963, 952(a), 846 and 841 respectively. After a jury trial in the United States District Court for the Southern District of Florida, both defendants were found guilty of all the charges and they appealed. We affirm.

Florida Marine Patrol Officer Alan Richard was patrolling the Biscayne Channel during the evening of September 19, 1982. He observed a twenty-five foot boat which had just crossed the three-mile United States territorial border. Richard stopped the boat because it did not have proper lights, in violation of Fla.Stat.Ann. § 327.-50. Rojas and Morejon, the captain, were the only occupants of the boat. During his inspection, Richard found additional violations such as insufficient flotation devices, no horn or whistle and improper spacing of the registration number. Richard also noted that the United States Customs Service had included the boat on its "lookout" list. He issued a citation for some of the minor infractions and arrested Morejon for other violations which constituted misdemeanors under Fla.Stat.Ann. § 327.72. Because of the dangerous condition of the boat, Richard took it to the nearest safe harbor, No Name Cove. He testified at the trial that the boat handled poorly, as if it were heavily laden.

Customs Patrol Officer Irby Ferguson arrived at No Name Cove after the boat had docked and was in the custody of the state officers. Richard told him that the boat had crossed the border. He searched the boat and discovered that part of the decking had been cut out. Removing the false cover, Ferguson found a secret compartment in which were stored twenty-five bales of marijuana, weighing a total of 992.5 pounds.

Morejon and Rojas stated that Morejon had been hired to repair the boat's engines and sail it from the Florida Keys to Miami and that Rojas went along to do some fishing. They arrived on September 17, 1982. After working on the engine, they took the boat out and traveled to the Bahamas. There two other men boarded the boat. Morejon appeared to know them although Rojas claims that he knew neither

the men nor their exact location at that time.

In Nassau harbor the boat experienced engine trouble and someone discharged a flare to seek help from a nearby Bahamian Defense Force ship. Seaman Godfrey Wilson, who boarded the boat, testified that one of the two passengers had four rolls of money, each with a $100.00 bill on top. The Defense Force ship towed the boat back to shore where the two men who had boarded disembarked the vessel.

According to Rojas, he and Morejon then returned to the Keys on September 18, 1982. The next day, they traveled toward Miami while fishing along the way. That evening they were stopped by Richard and arrested. Rojas and Morejon spent over two days on the boat, working, traveling and sleeping.

Morejon first challenges the legality of the search by Customs Officer Ferguson. After a hearing, the district court denied his motion to suppress the evidence. Morejon argues that Richard did not have authority under state law to arrest him and that the illegal arrest tainted the search. Florida law provides that:

Every vessel on the waters of this state shall carry safety equipment and conform to uniform lighting requirements in accordance with current United States Coast Guard safety and lighting requirements, unless expressly exempt by state law.

Fla.Stat.Ann. § 327.50.

■ This section was amended in 1981. Prior to the amendment, the section was codified as § 371.57. It divided boats into classes by size and specified the safety equipment required for each class. *See* notes to § 327.50. Section 327.72 imposes the penalties for violations of § 327.50 but still refers to § 327.50's old code section number. It provides that:

(1) Any violation of the provisions of S. 371.57(1)(a) 1. and 2. shall be deemed a noncriminal violation as defined in S. 775.08(3), punishable by a fine of $25. (2) Any person failing to comply with the provisions of this chapter not specified in subsection (1) or not paying the fine specified in subsection (1) within 10 days, except as otherwise provided in this chapter, is guilty of a misdemeanor of the second degree, punishable as provided in S. 775.083, or S. 775.084.

Fla.Stat.Ann. § 327.72 (footnote omitted). Old § 371.57(1)(a) 1 and 2 required motorboats under sixteen feet to have one lifesaving device and one oar or paddle.

The deficiencies observed by the state officers went beyond the non-criminal violations set out in § 327.72. The boat was longer than sixteen feet. It did not have proper lights or a horn or whistle. As such, these offenses constituted misdemeanors and Fla.Stat.Ann. § 327.70(2) authorizes Marine Patrol Officers to arrest violators of the safety statutes. Richard's arrest of Morejon was therefore legal under Florida law.

■ Of greater significance is the fact that Rojas and Morejon crossed the border and entered the United States. They were therefore subject to a customs search. "Courts have held that the crossing of the international border three miles from the United States coast and *entry* into territorial waters justifies a valid border search." *United States v. Stanley,* 545 F.2d 661, 666 (9th Cir.1976), *cert. denied,* 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978) (citations and footnote omitted) (emphasis in original). In *United States v. Williams,* 617 F.2d 1063 (5th Cir.1980) (*en banc*),[1] the court of appeals stated that "[e]xtensive customs searches in territorial waters are universally thought to be legitimate .... [P]eople crossing into a nation's territorial waters know they are likely to be searched ...." *Id.* at 1085. The district court correctly denied the motion to suppress the marijuana.

---

**1.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

■ Morejon next contends that the prosecutor's closing argument was sufficiently prejudicial to require a mistrial. One source of this assignment of error is the prosecutor's statement to the jury that the defendants' story contained "lies that they produced." Transcript II at 32. There was no objection to this comment. In the absence of a timely objection, we must view the remarks under the plain error standard. *United States v. Stout,* 667 F.2d 1347 (11th Cir.1982). When interviewed after their arrest, Morejon and Rojas said that they had not been out of the country. Transcript at 252–54. Although there is some dispute as to what the defendants meant, their statements, combined with the testimony of the Bahamian Defense Force officers, provide a sufficient basis in the record for the prosecutor's comments. They do not constitute plain error.

Later, the prosecutor told the jury that:

Mr. Mann: (Prosecutor) "You are the conscience of this community. That's right. You. The 12 of you are the conscience—"

Ms. Carroll: (Atty. for Rojas) "Objection, your Honor."

The Court: "Objection sustained."

Mr. Mann: "If you feel that this type of explanation, given all the other circumstances in this case, casts a real doubt on the government's case, go ahead and let him right out. Let him right out on the street, and it will not be I who has done it."

Ms. Carroll: "Objection."

The Court: "Objection sustained, Counsel. Ladies and gentlemen, you are the finders of the facts here; and you have to determine that from the evidence and those witnesses that testified here. As again, the arguments of counsel are not evidence of any of the facts."

*Id.* at 71–72.

■■ The test in this circuit in assessing the prosecutor's comments for reversi-

ble error is "(1) whether the remarks were improper and (2) whether they prejudicially affected substantive rights of the defendants." *United States v. Vera,* 701 F.2d 1349, 1361 (11th Cir.1983). Reviewing the entire record, we conclude that the prosecutor's statements, although perhaps improvident, did not affect the defendants' substantive rights. In any event, the district court cautioned the jury that the arguments of counsel were not evidence in the case. This instruction cured any error. *Id.; United States v. Butera,* 677 F.2d 1376 (11th Cir.1982), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983).

■ Finally, both Rojas and Morejon complain that the evidence was insufficient to sustain their convictions. The standard of review of the sufficiency of the evidence is whether "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (Unit B *en banc*), *aff'd on other grounds,* —— U.S. ——, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).[2] The evidence must be viewed in the light most favorable to the government, accepting all reasonable inferences in support of the jury's verdict. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Curra-Barona,* 706 F.2d 1089 (11th Cir.1983).

Rojas claims that the evidence only shows his mere presence on the boat and that presence at the scene of a crime, without more, will not support a conviction. *United States v. MacPherson,* 664 F.2d 69 (5th Cir.1981) (Unit B). The government is not required to introduce direct evidence of the conspiracy or of Rojas' knowledge of the marijuana. *United States v. Miller,* 693 F.2d 1051 (11th Cir.1982). In *Mac-Pherson* and *United States v. Ferg,* 504 F.2d 914 (5th Cir.1974), another case relied upon by Rojas, there was no evidence beyond the defendant's presence. Here, the government introduced additional indicia of his involvement.

**2.** In *Stein v. Reynolds,* 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as precedent all decisions of Unit B of the former Fifth Circuit.

Rojas was on the boat for more than two days. He helped Morejon work on the motor and traveled to the Bahamas, where they met two other men, one with a large amount of cash. Officer Richard testified that Rojas was "not surprised" at the discovery of the marijuana. Transcript at 176. In *MacPherson, supra,* there was no evidence of the relationship between the defendant and the captain. Here, Rojas and Morejon were friends. There was a large amount of marijuana aboard which required the loading efforts of more than one person. *Miller,* 693 F.2d at 1051. *See United States v. Stuart-Caballero,* 686 F.2d 890 (11th Cir.1982), *cert. denied* 459 U.S. 1209, 103 S.Ct. 1202, 75 L.Ed.2d 444 (1983). Rojas, allegedly on the boat to fish, did no fishing until the day they were arrested. This evidence, along with the length of the voyage, the small size of the boat, and the close relationship between Rojas and Morejon is sufficient to support Rojas' conviction. *United States v. Curra-Barona,* 706 F.2d 1089 (11th Cir.1983).

The evidence against Morejon is even stronger. He operated the boat. Richard testified that the boat handled poorly because it was heavily laden. Transcript at 109. The boat also had an unusually high deck, indicating that something might be stored beneath it. *Id.* at 106. Morejon, a mechanic, worked on the engine. He took the boat to the Bahamas where he met two men, one with a large amount of cash. He had been entrusted with the control of the boat, ostensibly to repair the engine. Like Rojas, Morejon did not appear surprised when the marijuana was discovered by the officers. *Id.* at 176. This evidence, along with that recited above more than adequately recounts Morejon's involvement.

For the foregoing reasons, the judgment of the district court is AFFIRMED.