**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Evelio SARDA–VILLA, Mario Leonardo Paret-Casola, Defendants-Appellants.**

**No. 84–5231.**

United States Court of Appeals,
Eleventh Circuit.

May 21, 1985.

Johnson, Circuit Judge, filed a specially concurring opinion.

**1234**

Humberto J. Aguilar, Miami, Fla., for Sarda-Villa.

Mark King Leban, Miami, Fla., for Paret-Casola.

Isaac Mitrani, Lee E. Stapleton, Nancy L. Worthington, Asst. U.S. Attys., Linda Collins Hertz, Sonia O'Donnell, Chief Appellate Section, Miami, Fla., for plaintiff-appellee.

Before FAY and JOHNSON, Circuit Judges and DYER, Senior Circuit Judge.

FAY, Circuit Judge:

This is a search and seizure on the high seas case. Appellants Sarda-Villa and Paret-Casola challenge their convictions for possession with the intent to distribute marijuana, in violation of 21 U.S.C. §§ 955a and 18 U.S.C. § 2, and Sarda-Villa challenges his additional conviction for conspiracy to possess with the intent to distribute marijuana, in violation of 21 U.S.C. §§ 955a(c) and 955c. The most important issue in this appeal is whether the district court erred in denying appellants' motion to suppress the marijuana found on the boat seized by United States Customs agents. Appellants also claim that their convictions are based on insufficient evidence.[1] We affirm.

## I. FACTUAL BACKGROUND

On May 25, 1983, at about 5:00 a.m., United States Customs officers who were patrolling the waters six miles offshore of the Miami area, spotted the running lights of a vessel which was coming over the horizon. The vessel, which was heading towards Miami, was coming from the direction of the Bahamas. Customs officers watched the vessel for approximately forty minutes, and waited until it was nearer to the Customs boat to stop it. The officers boarded the boat approximately six miles offshore, well within United States Customs twelve-mile jurisdictional waters.

Upon boarding the vessel, a Customs officer told the three crew members to gather at the "aft" of the boat. One of the officers asked for the captain and Sarda-Villa stepped forward. When asked where he was coming from, Sarda-Villa replied, "Miami". He said he had been out testing the engines and had only been out a short while. When asked if there were any weapons on board the vessel, Sarda-Villa

---

1. Appellant Paret-Casola also contends that the district court abused its discretion in admitting into evidence the gun found on the boat. At trial, the district judge cautioned the jury that the gun was "admitted for the limited purpose of showing intent, knowledge" but not to be used "as evidence of the guilt of either defendant in this case." (R. Vol. 4 at 259). Moreover, this circuit's predecessor has recognized that weapons are often a tool of the drug trade. *See United States v. Perez,* 648 F.2d 219, 224 (5th Cir. Unit B), *cert. denied,* 454 U.S. 1055, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981). *Accord United States v. Picklesimer,* 585 F.2d 1199, 1204 (3d Cir.1978); *United States v. Weiner,* 534 F.2d 15, 18 (2d Cir.) ("Experience ... has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade...."), *cert. denied,* 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976). Such weapons "provide[ ] the jury with an evidentiary basis for inferring that [the defendant] knew he was involved in an illicit transaction and had intentionally taken steps to protect his interest." *United States v. Lippner,* 676 F.2d 456, 463 (11th Cir.1982). Accordingly, the district court did not abuse its discretion in admitting the gun into evidence.

said "yes" and showed the Customs officers a bag which contained a gun.

Both Customs officers noticed several "unusual" things about the MARIA CONSTANCIA. One of the officers testified that the floor of the vessel was covered with a linoleum tile type of material, which is very slick and hazardous to walk on while wet. The officer also noted that the ice in the ice chest was melted, indicating that the crew had been away from the source of the ice for a long period of time.

In addition, the MARIA CONSTANCIA had oversized fuel tanks for a vessel of that size. The boat, a 45-foot trawler, had two tanks, each capable of carrying 800 to 900 gallons of fuel. Each tank was surrounded by new wood and new foam. One of the Customs officers noticed five large fuel containers inside the cabin area. When asked about the purpose of the extra fuel, the captain did not reply. At that point, the Customs officers informed the crew that they were taking the vessel to Miami for further inspection.

The MARIA CONSTANCIA was brought to the Customs dock located on the Miami River, where it was searched by a Customs Patrol Officer.

While examining the seating area above the deck, the officer lifted the cushions on the seating area and saw a removable board which, when removed, revealed a storage compartment. The bottom compartment, which was covered and sealed, did not seem to be part of the deck because it was higher than the rest of the deck. Because this appeared unusual to the officers, they decided to investigate further. By prying through the layers with an ax and crowbar, the officer gained access to the false fuel tanks filled with 82 bales of marijuana, weighing 1,600 pounds. After finding the marijuana, Officer Halley told the three men in Spanish that they were being placed under arrest. Appellant Sarda-Villa then said, "I already knew that the moment we were boarded at sea, outside".

At the suppression hearing, appellant Paret-Casola testified that he could keep strangers from boarding the vessel, he had a financial interest in the marijuana and would profit from its sale, and he personally sealed the marijuana in the false fuel compartments and took steps to close it up so that no smell could be detected. He felt that the false compartments on the MARIA were the "most secret place[s] on the boat." Appellant Sarda-Villa did not testify.

The district court denied the appellants' motion to suppress the marijuana found on the boat. The court ruled that appellants did not have a sufficient expectation of privacy to confer standing. Alternatively, the court ruled that even if the appellants did have standing to challenge the search, the Customs officers had reasonable suspicion such as to warrant a further search of the boat, pursuant to the border search exception, and the search undertaken was reasonable.

## II. THE LAW

A. *Did appellants have a reasonable expectation of privacy in the hidden fuel tanks?*

■ The district court ruled that appellants did not have standing to challenge the search of the hidden fuel tanks. We agree.

■ The defendant bears the burden of proving a legitimate expectation of privacy in the areas searched. *See Rakas v. Illinois*, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978). On appeal, we review the evidence adduced at the suppression hearing in the light most favorable to the government. *United States v. Torres*, 720 F.2d 1506, 1510 (11th Cir.1983). The legitimacy of the appellants' privacy claim is determined by an examination of the totality of the circumstances. *Rakas*, 439 U.S. at 152, 99 S.Ct. at 435 (Powell, J., concurring); *United States v. Baron-Mantilla*, 743 F.2d 868, 870 (11th Cir.1984). Appellants based their privacy claim on three circumstances: the fact that strangers could be excluded from the boat,[2] the

2. We note that appellant Paret-Casola did not support his bald assertion that he could keep

appellants had a financial interest in the drugs seized,[3] and appellants took elaborate pains to ensure that the hidden compartment containing the drugs would be the most secret place on the boat. Appellants particularly relied on the latter circumstance in support of their claim of standing.

■ It is clear that "mere presence" aboard a vessel is insufficient to confer standing. *United States v. Hensel*, 672 F.2d 578, 579 (6th Cir.) (defendant had no legitimate expectation of privacy in stolen truck or its contents), *cert. denied*, 457 U.S. 1107, 102 S.Ct. 2907, 73 L.Ed.2d 1316 (1982). If the appellant does not own or rent the premises searched, however, he may establish standing by demonstrating "an unrestricted right of occupancy or custody and control of the premises as distinguished from occasional presence." *United States v. Bachner*, 706 F.2d 1121, 1126 n. 6 (11th Cir.) (quoting *State v. Leveson*, 151 So.2d 283, 285 (Fla.1963)), *cert. denied*, — U.S. —, 104 S.Ct. 247, 78 L.Ed.2d 235 (1983). In *United States v. Baron-Mantilla*, 743 F.2d at 870, this court held that the appellant failed to establish a reasonable expectation of privacy based solely on the possession of a key to an apartment. Analogously, we believe that appellant Paret-Casola's bare assertion that he could exclude strangers from the boat,[4] particularly in light of the fact that the captain of the boat—Sarda-Villa—did not testify at the suppression hearing and Paret-Casola was only a crew member, was not sufficient to confer standing.

Similarly, appellants' financial interest in the contraband was insufficient evidence to establish standing. We note that appellant Paret-Casola testified on cross-examination that he did not own the marijuana and he did not have the money to buy it: he was simply a crew member on the boat. (R. Vol. 3 at 57–58). Under these circumstances, appellants' "financial" interest is insubstantial support to confer standing. The fact that they might gain financially from a successful smuggling venture is not sufficient.

■ We turn now to appellants' main argument that their efforts to ensure that the hidden compartments remain hidden establish a reasonable expectation of privacy. Two recent Supreme Court cases have addressed the question of what constitutes a *reasonable* expectation. In *New Jersey v. T.L.O.*, — U.S. —, —, 105 S.Ct. 733, 742, 83 L.Ed.2d 720 (1985), the Supreme Court stated that "the Fourth Amendment does not protect subjective expectations of privacy that are unreasonable or otherwise 'illegitimate'". The expectation of privacy is reasonable or justifiable if it meets two requirements: (1) an actual or subjective expectation by the defendant; and (2) the expectation is one that "society is prepared to recognize as 'reasonable'". *Hudson v. Palmer*, — U.S. —, —, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 393 (1984) (quoting *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967), (Harlan, J., concurring)). The Court has emphasized this second requirement. *Hudson v. Palmer*, — U.S. at — n. 7, 104 S.Ct. at 3199 n. 7.

■ Certainly, appellants have alleged an actual expectation of privacy in the hidden compartments. However, we are not willing to say that society is prepared to recognize a justifiable expectation of privacy solely on the basis of appellants' efforts to secret the contraband. Drug smugglers can not assert standing solely on the basis that they hid the drugs well and hoped no

---

strangers from getting on the boat, R. Vol. 3 at 153, with any other evidence. Paret-Casola did not own the boat, nor was he the captain of the boat. A mere crew member, we question his "right" to exclude others from the boat. However, even if he did have this right, the result is the same: neither appellant had standing to challenge the search.

**3.** At the suppression hearing, appellant Paret-Casola testified that he did not own the marijuana, that he was not the buyer of the marijuana, and that he would not be selling the marijuana. His financial interest was, therefore, limited to the payment of money for transporting the contraband.

**4.** *See supra* note 2.

one would find them. "[W]e should not, as judges, merely recite the expectations and risks [of privacy] without examining the desirability of saddling them upon society." *Id.* — U.S. at — n. 7, 104 S.Ct. at 3199 n. 7 (quoting *United States v. White*, 401 U.S. 745, 786, 91 S.Ct. 1122, 1143, 28 L.Ed.2d 453 (1971) (Harlan, J., dissenting)). We think that the search at issue here—of hidden fuel compartments in a boat challenged by the captain (not the owner) and a crew member—is a far cry from the search of a home or the personal belongings of a defendant. *See New Jersey v. T.L.O.*, — U.S. at — – —, 105 S.Ct. at 741–42.

A secret compartment constructed within the confines of the hull of a ship is totally unlike a personal dufflebag or footlocker in terms of the uses to which it may be put, and the expectations of exclusive control to which it gives rise. We cannot imagine that society would recognize as reasonable the use of "dead space" in the hull of a ship, sealed with permanent material and disguised in appearance, for the legitimate storage of personal items.

B. *Even if appellants did have standing, was the search reasonable?*

██ Alternatively, we hold, as did the district court, that the search of the boat was reasonable and within the border search exception to the Fourth Amendment. All parties concede that this was a border search case. Therefore, appellants concede the legality of the initial boarding of the boat, but challenge the scope of the subsequent search.

██ "It is well established that border searches are not subject to constitutional probable cause and warrant requirements." *United States v. McMurray*, 747 F.2d 1417, 1419–20 (11th Cir.1984). *See United States v. Ramsey*, 431 U.S. 606, 619, 97 S.Ct. 1972,

1980, 52 L.Ed.2d 617 (1977). However, the broad authority to conduct border searches is, of course, circumscribed by the reasonableness requirement of the Fourth Amendment. *See United States v. Villamonte-Marquez*, 462 U.S. 579, 587, 103 S.Ct. 2573, 2579, 77 L.Ed.2d 22 (1983); *McMurray*, 747 F.2d at 1420. There is no bright line rule as to what constitutes the limits of this general reasonableness requirement. *See Ramsey*, 431 U.S. at 618 n. 13, 97 S.Ct. at 1979 n. 13 (question explicitly reserved); *United States v. Herrera*, 711 F.2d 1546, 1550 n. 6 (11th Cir.1983).[5]

We conclude that based on the Customs agents' reasonable suspicion of illegal activity, the subsequent search was reasonable. The Customs officers sighted the boat approximately 14 miles offshore, coming from the direction of the Bahamas and heading toward Miami. Appellant Sarda-Villa told the Customs officers that he came from Miami. Contrary to appellant's story, however, a Customs officer noted that the ice in the boat's ice chest had melted, indicating the boat had been away from the source of the ice for a long time. Additionally, the officers saw several large, extra fuel containers on board, whose purpose the captain, when asked, did not explain. The boat also contained two very large capacity fuel tanks. Moreover, there was a gun on the boat.[6] The aggregation of all these circumstances clearly amounted to reasonable suspicion, and therefore the customs officers were justified in towing the boat back to shore to conduct a more thorough search of the ship.

██ Appellants make much of the fact that an ax and a crowbar were used to pry open the layers of deck leading to the hidden contraband. As the attached pictures show, the removal of the boards did not constitute the level of destruction appellants would have us believe.

---

5. In the body search cases, this circuit has adopted a sliding scale analysis "which adjusts the strength of suspicion required for a particular search to the intrusiveness of that search." *United States v. Vega-Barvo*, 729 F.2d 1341, 1344 (11th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 597, 83 L.Ed.2d 706 (1984). Even if we were to

adopt this mode of analysis in the boat cases, the instant search would be justified because of the clear existence of reasonable suspicion and the fact that this was not a "highly intrusive search." *See McMurray*, 747 F.2d at 1420.

6. *See supra* note 1.

PICTURE #1

(BEFORE REMOVAL OF THE BOARDS)

PICTURE #2

(AFTER REMOVAL OF THE BOARDS)

PICTURE #3

Moreover, once the officers have the right to conduct a thorough search, they are entitled to use reasonable means to effect that search. As we have recently noted, "[o]therwise, a person could preclude inspection of a vessel's interior simply by covering overall entrances to the interior so that some damage to the vessel would be inevitable if officers attempted to conduct a full-scale search." *United States v. Andreu*, 715 F.2d 1497, 1501 n. 13 (11th Cir. 1983).

Accordingly, we hold that based on the reasonable suspicion[7] held by the Customs officers in this border search case, a full-scale search was constitutionally permissible.

#### C. *Were appellants' convictions based on insufficient evidence?*

Appellants challenge the sufficiency of the evidence to sustain their convictions. In determining the sufficiency of the evidence:

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

---

**7.** We have assumed for purposes of this appeal that only reasonable suspicion existed here. We note that the aggregate of suspicious circumstances here may well amount to probable cause.

"In applying this standard all reasonable inferences and credibility choices must be made in favor of the jury verdict, and that verdict must be sustained if there is substantial evidence to support it when the facts are viewed in the light most favorable to the government." *United States v. Davis,* 666 F.2d 195, 201 (5th Cir. Unit B 1982).

 Several factors exist in the instant case which would support an inference that appellant had knowledge of and participated in the drug smuggling. There was some evidence here regarding the length of the voyage. In addition, a large quantity of marijuana was found aboard the boat. A close relationship between the captain and the crew could be inferred from the length of the voyage and the relatively small size of the boat. *See United States v. Rojas,* 731 F.2d 707, 711 (11th Cir.1984). Moreover, appellant Paret-Casola stated after his arrest that he knew he had been arrested the moment the customs officers boarded the boat. *See United States v. Sarmiento,* 744 F.2d 755, 762 (11th Cir. 1984). From all of these circumstances, the jury could reasonably have inferred the appellants' culpability in the smuggling of the marijuana.

Accordingly, the district court's judgment is AFFIRMED.

JOHNSON, Circuit Judge, concurring specially:

Although I concur in the result reached by the majority, I write separately to emphasize my disagreement on the issue of standing. I reject the conclusion of the majority that appellants' interest in the privacy of the fuel tank compartment is not one that society would be prepared to recognize as legitimate. While the notion that some subjective expectations of privacy are "unreasonable or otherwise illegitimate" is plausible in theory, the only recent case in which the use of this standard has led to a rejection of an asserted interest involved prisoners in a state institution. *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). As the Supreme Court

has subsequently observed, the standards used to evaluate the Fourth Amendment standing of prisoners must of necessity be different, because of "the harsh facts of criminal conviction and incarceration." *New Jersey v. T.L.O.,* —— U.S. ——, ——, 105 S.Ct. 733, 742, 83 L.Ed.2d 720 (1985). The majority attempts to ignore this crucial distinction, stating that "[d]rug smugglers can not assert standing solely on the basis that they hid the drugs well and hoped no one would find them." This effort to analogize appellants to the prison population conflicts with the Supreme Court's own understanding of its holding in *Hudson,* as appellants have neither been convicted nor incarcerated. But more importantly it conflicts with the presumption of innocence which must be maintained until the verdict is issued in a criminal proceeding. Claimants at a suppression hearing have not yet been tried for, let alone convicted of, the offenses with which they are charged: to describe them as "drug smugglers" or assimilate their privacy interests to those of prisoners is unacceptable. I would hold that appellants had standing to challenge the search of their vessel.