**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George M. MASSELL, II,
Defendant-Appellant.**

**No. 86-3447.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 7, 1987.

---

Martin R. Raskin, Raskin & Graham, P.A., Miami, Fla., for defendant-appellant.

Robert W. Merkle, U.S. Atty., Robert Kennedy, Asst. U.S. Atty., Tampa, Fla., Sidney M. Glazer, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before TJOFLAT and EDMONDSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

Appellant George Massell challenges his conviction in district court of: (1) possession of hashish oil with intent to distribute, in violation of 21 U.S.C. § 955a(a), (2) conspiracy to import hashish oil, in violation of 21 U.S.C. §§ 952(a) and 963; and (3) conspiracy while on board a United States vessel to possess hashish oil with intent to distribute, in violation of 21 U.S.C. §§ 955a(a) and (c). He asserts that the lower court erred in denying his motions to suppress evidence, and to grant a continuance during trial. He also contends there were other procedural errors. Finding no merit in these assertions, we affirm the conviction.

## I. FACTUAL BACKGROUND

On January 18, 1986, Customs officials observed a vessel on radar which was headed from the Gulf of Mexico towards Clearwater, Florida; and as the vessel came within sight, officials recognized her to be a 52–foot Irwin sailing yacht named the Navesink. Earlier in November 1985, one of the Navesink's crew members, co-defendant Fenton Sellers, told a confidential informant that he could smuggle marijuana from Jamaica by either aircraft or vessel. Said informant relayed this information to Randy Davis, a Special Agent Group Supervisor with the Customs Service. Acting on this information, Customs officials intercepted the ship at Clearwater Pass, a strip of water just off the coast of Florida.

After stopping the ship, Customs officials boarded and found George Massell, II, the "owner" of the ship;[1] Christopher Stang, the captain; and Fenton Sellers, the crew member. Massell told the officials that they had been in the Grand Cayman Islands for four months furnishing diving charters. Agent Davis knew this statement was false, since he had seen both the vessel and Sellers in November 1985 in Clearwater Beach. The Customs officials then stated that the vessel would have to dock at a shore location where it would have to clear Customs and endure a Customs search. Massell agreed, saying he welcomed a thorough search of the vessel.

Once the vessel docked, a Customs Inspector allowed Massell to go aboard the Navesink to obtain documentation concerning the boat. While appellant was on board, a Clearwater police officer heard a clicking sound, and upon investigation, he found Massell tightening the ship's swing keel. Massell stated that he did not want the swing keel to touch bottom. Customs officials searched the ship for one-half hour, finding a semiautomatic machine gun, three long guns, ammunition, diving gear, and charts of Jamaica and the Cayman Islands. They then informed Massell that they were going to remove the vessel from the water to check its hold. Massell did not object and merely encouraged the officials to be careful not to damage the boat. An official assured him that the government would pay for any damage to the boat and asked appellant if the boat had a swing keel. Massell replied that he had removed it two years before and admitted to lying about its presence earlier in the search. Once the vessel was out of the water, Customs officials boarded her and released the line attached to the drop-keel winch. The plate cover to the swing keel compartment then fell open and exposed a cavity filled with 207 pounds of hashish oil, with a wholesale value of $300,000. When this happened, appellant responded "I

---

1. Actually, title to the Navesink was in a corporation owned by a Dr. Massell, the appellant's father.

guess we are in trouble now." He was then arrested and Mirandized.

Massell, Stang, and Sellers were charged with possession of hashish oil with intent to distribute, conspiracy to import hashish oil, and conspiracy while on board a United States vessel to possess hashish oil with intent to distribute. Co-defendant Sellers pled guilty. Appellant moved to suppress all physical evidence taken from the Navesink. The district court denied the motion. The district court also refused to allow Massell to introduce Sellers' guilty plea into evidence. The court refused to grant continuances for appellant to prepare for the testimony of his ex-wife, Lynn Miller, and to locate individuals about whom she testified to determine whether their testimony would impeach her credibility. The government had not included Ms. Miller's name on the witness list provided to appellant. At trial, she testified about Massell's prior drug use while they were still married. The trial court also refused to accept Massell's requested jury instruction dealing with the jury's duty not to convict on suspicion or innuendo.

The jury found appellant guilty on all counts, and the court sentenced him to ten years' imprisonment with a $25,000 fine on the possession count, and five years probation on each conspiracy count, to be served consecutively to the prison sentence.

## II. THE SUPPRESSION MOTION

Appellant challenges the lower court's denial of his motion to suppress all physical evidence obtained by the search of the Navesink. He claims that the search of the swing keel area was beyond the scope of a Customs search, and was therefore illegal. If the search was illegal, then the hashish oil would be inadmissible at trial as fruit of a poisonous tree. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct.

182, 64 L.Ed. 319 (1920). The lower court denied appellant's motion on two grounds. The court claimed appellant had no standing to object to the search, and alternatively, the court found that appellant consented to the search. We must examine each of these decisions before dealing with the actual legality of the search.

### A. *The Standing Question* [2]

Before appellant may properly object to the search of the Navesink, he must show the court that he has standing to invoke the exclusionary rule of the Fourth Amendment. To do this, he must demonstrate a legitimate expectation of privacy in the particular areas of the vessel searched. *See Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). "The defendant bears the burden of proving a legitimate expectation of privacy in the areas searched." *United States v. Sarda-Villa*, 760 F.2d 1232, 1235 (11th Cir.1985). On appeal, this court must examine the evidence garnered at the suppression hearing in a light most favorable to the government. *United States v. Torres*, 720 F.2d 1506, 1510 (11th Cir.1983).

In ruling that the appellant did not have standing to object to the search of the Navesink, the lower court referred to our decision in *Sarda-Villa*. It is our opinion that the court misinterpreted this case. The court emphasized that *Sarda-Villa* dealt only with standing in "compartment cases." [3] The case did hold that a defendant's efforts to ensure that contraband in hidden compartments remained hidden did not establish a reasonable expectation of privacy. *Sarda-Villa*, 760 F.2d at 1236. However, this court in *Sarda-Villa* also looked at two other factors which might have conveyed standing. One was the defendant's argument that they could exclude strangers from the boat; the other dealt with their financial interests in the marijua-

---

2. The proper scope of a border search and appellant's standing to object to the search of the Navesink are legal issues subject to plenary review.

3. When asked by Massell's attorney if his client had standing to object to the search, the court replied: "[i]f standing consisted of ownership in

the vehicle and that type of thing, I would find that you had standing and I would find he had standing. However, in light of that Eleventh Circuit decision on the compartment cases [*Sarda-Villa*], I am finding that there is no standing." [R. 9–300, 301].

na seized. *Id.* Although the defendants in *Sarda-Villa* were found not to have standing on any of these grounds, the case does not stand for the proposition that there is never an expectation of privacy when a secret compartment is used.

 Appellant does meet one test for establishing standing. Even if the appellant did not own the Navesink, he has standing to object to illegal searches of the vessel if he can show "an unrestricted right of occupancy or custody and control of the premises as distinguished from occasional presence." *United States v. Bachner,* 706 F.2d 1121, 1126 n. 6 (11th Cir.1983) *(quoting State v. Leveson,* 151 So.2d 283, 285 (Fla.1963)), *cert. denied,* 464 U.S. 896, 104 S.Ct. 247, 78 L.Ed.2d 237 (1983). Although appellant's father, Dr. Massell, owned title to the Navesink through the Newbird Charter Corporation, appellant testified at the suppression hearing that he had unrestricted custody and control of the vessel. (R. 9–253). Appellant also testified that he was in charge of chartering the boat for the Newbird, Corp. (R. 9–252). The government failed to introduce any evidence contrary to his assertions. Therefore, even when viewing the evidence in a light most favorable to the government, we find that Massell did have standing to object to the vessel's search due to his unrestricted right of custody and control to the Navesink.

### B. *Massell's Consent to the Search*

 Although the lower court mistakenly held that Massell lacked standing to object to the legality of the search at trial, it was correct in finding that Massell consented to the search of the Navesink. The prosecutor has the burden of proving that the defendant consented to the search and that this consent was given freely and voluntarily, and was not mere acquiescence to a claim of lawful authority. *Bumper v. North Carolina,* 391 U.S. 543, 548–49, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968).

When determining whether the defendant freely consented to the search, the court must examine the totality of the circumstances. *United States v. Sierra-Hernandez,* 581 F.2d 760, 764 (9th Cir.), *cert. denied,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978). In this case, the Customs officials boarded the Navesink and Massell readily agreed to a search of the vessel.[4] Even when Customs officials pulled the ship out of the water, Massell did not object. He merely indicated concern that moving the boat might cause damage to her. (R. 10–394). Once the bottom became visible appellant stated "now you've seen the bottom and you can put it back in the water now." (R. 10–394).

 The trial judge's findings on the issue of consent to search will be overturned only if the reviewing court determines that they are clearly erroneous. *United States v. Lemon,* 550 F.2d 467, 472 (9th Cir.1977). In other words, if the lower court's account is plausible in light of the record viewed in its entirety, we may not reverse it, even if we would have weighed the evidence differently. *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

 In this case, the lower court made a plausible finding based upon the evidence that Massell consented to the search of the vessel, even to the point of lifting the boat out of the water. Therefore, the court's decision that Massell consented to the search was not clearly erroneous.

### ·C. *The Legality of the Search*

 Even if Massell had not consented to a search, or even if Massell's consent to a search did not include pulling the boat from the water, the search is still lawful. "It is well established that border searches are not subject to constitutional probable cause and warrant requirements." *United States v. McMurray,* 747 F.2d 1417, 1419–

---

**4.** Randy Davis, a Special Agent with the Customs Service testified that after the Customs officials boarded the Navesink, Massell asked him if they were going to search the vessel and said: "Well, we came over from the Cayman's and we very seldom see any Coast Guards, but you're welcome to search the vessel ... I want you to go through it and do a thorough search of the vessel." (R. 8–62).

20 (11th Cir.1984). However, the broad authority to conduct border searches must be tempered by the reasonableness requirement of the Fourth Amendment. *United States v. Sarda-Villa*, 760 F.2d at 1237. We find that the Customs officials possessed a reasonable suspicion of ongoing criminal activity aboard the Navesink. The officials were working on a tip that there were narcotics aboard the vessel. Furthermore, Massell cast suspicion on himself by lying about how long he had kept the boat out of the country, and about the presence of the swing keel. Finally, there was an automatic weapon and other guns on the boat.

Appellant argues that Customs officials carried the extended search beyond Fourth Amendment reasonableness standards when they lifted the Navesink out of the water to open the swing keel compartment. "[T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). Removing the Navesink from the water was not unreasonable, as there was no damage to the boat and this was the easiest method of finding the hashish oil. Customs officials must be able to conduct a thorough search and on occasion the vessel or vehicle being searched will have to be manipulated in order to discover the hidden contraband. "Otherwise, a person could preclude inspection of a vessel's interior simply by covering over all entrances to the interior so that some damage to the vessel would be inevitable if officers attempted to conduct a full-scale search." *United States v. Andreu*, 715 F.2d 1497, 1501 n. 13 (11th Cir.1983). In this case the only other way to retrieve the hashish oil was to go through the floor of the vessel.[5] Placing the Navesink on blocks was the most reasonable method of finding the narcotics, therefore, the hashish oil was legally seized by the government.

## III. FENTON SELLERS' GUILTY PLEA

Appellant's next assertion of error concerns the district court's denial of his motion to introduce co-defendant Fenton Sellers' guilty plea into evidence. Massell's central defense was that he did not know about the secret compartment aboard the Navesink, and that Sellers was wholly responsible for hiding the narcotics. He argues that Sellers' guilty plea tended to prove this theory, therefore, the court should have presented it to the jury.

■ "A defendant is entitled to prove his innocence by showing that someone else committed the crime." *United States v. Brannon*, 616 F.2d 413, 418 (9th Cir.), *cert. denied*, 447 U.S. 908, 100 S.Ct. 2993, 64 L.Ed.2d 858 (1980). However, in this case, the lower court did not abuse its discretion in denying appellant's motion. The guilty plea would not have indicated that appellant was innocent. Sellers had assumed no responsibility for the modifications of the boat that created the hidden compartment in the keel. More importantly, however, Sellers also pled guilty to conspiracy to import a controlled substance, along with conspiracy while on board a United States vessel to possess a controlled substance with intent to distribute. Therefore, Sellers' plea was more likely to incriminate than exonerate Massell. Of course, Massell might have attempted to call Sellers as a witness; however, the government would then have cross-examined Sellers and asked him about Massell's actions in these crimes. Evidently, Massell thought this would not benefit his defense.

## IV. LYNN MILLER'S TESTIMONY

The next issue concerns the government's calling of a "surprise" witness, namely, Lynn Miller, the appellant's ex-wife. Massell contends that the trial court abused its discretion when it denied his motion for continuances made in order to locate the individuals mentioned in her tes-

---

5. *Compare, United States v. Sarda-Villa*, 760 F.2d 1232 (11th Cir.1985) (While searching defendant's ship, Customs officials acted reason- ably in using an ax and a crowbar to pry open the layers of deck leading to the hidden contraband.).

timony to determine whether their testimony would impeach her.

The trial commenced before the jury on May 20, 1986, shortly after 10:25 a.m. Before 8:35 a.m. the next day, the prosecutor told appellant's counsel that Ms. Miller would testify. Appellant requested a hearing on the marital privilege and complained of the late notification concerning Ms. Miller's status as a potential witness. The prosecutor, at the court's request, then made a proffer of her expected testimony. Appellant's counsel claimed that Ms. Miller refused to allow him to interview her in preparation for trial. In this pretrial *in camera* proceeding, the trial judge found that Ms. Miller's testimony would describe one continuous scheme of narcotics trafficking and was not testimony of other crimes under Fed.R.Evid. 404(b). The court also held that it would not allow the prosecutor to question Ms. Miller on her personal use of drugs in the company of the appellant. However, the court held that if the appellant tried to impeach Miller's credibility by asking her on cross about using drugs, the government would then be justified in allowing her to testify that Massell was the provider of the narcotics, and that they both partook of the drugs together.

At trial, Ms. Miller, who was the last witness called, testified that Massell owed her money when they divorced, and that he raised it by importing marijuana on his boat. She also testified that he knew of the secret compartment in the keel. Massell's motions for continuance were denied.

### A. *The Continuance Motion*

"Defendant's motion for continuance was addressed to the sound discretion of the trial court. The denial of that motion by the trial judge is not due to be disturbed by us unless defendant can show that there was an abuse of that discretion." *United States v. Smith*, 591 F.2d 1105, 1110 (5th Cir.1979).[6] In this case, both appellant and the government agree that there is no

precedent holding that the government must provide the defendant with a list of witnesses. *United States v. Hancock*, 441 F.2d 1285 (5th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 81, 30 L.Ed.2d 63 (1971). However, appellant argues that when the government does provide a witness list, it should contain *all* of the government's witnesses. Appellant claims that, otherwise, the government can mislead the defendant. Therefore, appellant concludes that the court should have granted a continuance for him to interview Ms. Miller.

■ The lower court did not abuse its discretion in denying this motion. The government did not tell the appellant that Ms. Miller would testify until the trial because there was concern for her safety. Evidently, the government convinced the lower court of this danger during the *in camera* proceeding, as the court ordered a special condition of probation that Massell is to avoid all future contact with his ex-wife. (R. 2–97). We also find that since the government did tell the defense that Ms. Miller would testify and also what she would say, along with the fact that appellant could have moved the court to order Ms. Miller to allow Massell's counsel to interview her, there was no abuse of discretion in the lower court's decision to deny Massell's motion for continuance. *United States v. Sukumolachan*, 610 F.2d 685 (9th Cir.1980) (There was no basis for argument that the omission of a government witness from the proffered witness list misled the defendant when defendant was well aware of said witness' existence and possible testimony).

### B. *The Cross-Examination of Miller*

■ The lower court did not err in presenting Massell with a Hobson's choice concerning his cross-examination of Lynn Miller. Since Miller's and Massell's residential drug use was inextricably intertwined, there was no way for the court to limit her testimony to a simple statement that she had used drugs. Even if we had

---

**6.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

found that the court erred in allowing this evidence against Massell, this error would be harmless when compared with the extensive evidence of Massell's guilt, including his own false statements about the keel to the Customs officials and evidence concerning the modification of the vessel which was under Massell's exclusive control.

## V. THE JURY INSTRUCTIONS

Appellant's last issue concerns the trial court's refusal to give his requested special instruction to the jury.[7] Other circuits have held that a defendant is not entitled to a "mere presence" instruction of his own construction. *United States v. Ferris*, 719 F.2d 1405, 1408 (9th Cir.1983). "If the charge given [by the court] is a correct statement of the law, if it fairly presents the issues to the jury and it is substantially similar to the requested instruction, a federal judge has great latitude in phrasing the instruction." *United States v. Duff*, 707 F.2d 1315, 1321 (11th Cir.1983). In this case, the two charges were substantially similar and the court's instruction sufficiently embraced the legal principles involved. Therefore, the lower court's instruction was proper. We find no error in the record and we AFFIRM.

---

7. Massell submitted the following proposed jury instruction to the trial court:

> Even though the Defendant's presence at the scene of a crime might be "highly suspicious," "this is not a substitute for evidence sufficient to prove beyond a reasonable doubt. Although it is certainly possible—maybe even probable—that [the Defendant] was involved in the conspiracy, such speculation does not constitute proof beyond a reasonable doubt, and juries must not be permitted to convict on suspicion and innuendo."

The trial court's actual jury instruction went thusly:

> [M]ere presence at the scene of an alleged transaction or event, or mere similarity of conduct among the various people and the fact that they may have associated with each other and may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy.
>
> Also, a person who has no knowledge of a conspiracy, but who happens to act in a way that advances the object or the purpose, does not become a conspirator ... if you conclude that a conspiracy did exist as alleged, you should next decide whether or not the defendant under consideration willfully became a member of that conspiracy.

(R. 15–1172, 1173).