**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Donald JONAS, Defendant-Appellant.**

**No. 79–5189**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.
Unit B

March 9, 1981.

Ronald A. Dion, Alvin E. Entin, Lewis S. Kimler, North Miami Beach, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Ian M. Comisky, Linda Collins-Hertz, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before RONEY, FRANK M. JOHNSON, Jr. and HENDERSON, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Appellant Donald Jonas appeals from his conviction, following a jury trial, on both counts of a two-count indictment charging him with conspiracy to import marijuana into the United States in violation of 21 U.S.C.A. §§ 952(a) and 963 (Count I), and conspiracy to possess marijuana with intent to distribute it in violation of 21 U.S.C.A. §§ 841(a)(1) and 846 (Count II).

On January 4, 1978, the Coast Guard Cutter *Diligence*, while on routine patrol, observed appellant's United States registered vessel, the *Lady Sara*, some sixty to eighty miles from the Florida Keys. The captain of the *Diligence* verified that the *Lady Sara* was on a Coast Guard "lookout list" because of suspected drug smuggling. A Coast Guard party boarded the vessel and commenced a routine document and safety in-

spection.[1] The Coast Guard boarding crew and appellant and two codefendants went to the cabin area where the vessel's master looked for documentation papers. One officer then asked the crew whether there were any other crewmen on the vessel; because the crew did not respond to the question, another officer proceeded forward to look for additional crew personnel. Although no crewmen were found in the forward hold area, the officer did observe through an open hold several sacks of what appeared to be marijuana. After a test of the marijuana proved positive, the crew members were arrested and given their *Miranda* rights and the vessel was searched. The search revealed over 27,000 pounds of marijuana.

Appellant assigns several points of error. First, he challenges the validity of the administrative boarding and inspection on the grounds that such boarding and inspection, made pursuant to 14 U.S.C.A. § 89(a), were violative of the Fourth Amendment, and that the Coast Guard lacked reasonable suspicion to conduct such an inspection. He also contends that the Section 89(a) boarding and inspection were unconstitutional because such actions were a pretext for an illegal search. He further contends that his *Miranda* rights were violated because his initial inculpatory remarks, which were made during the routine inspection before he was given a *Miranda* warning, were the product of custodial interrogation. Additionally, he asserts that a prosecution witness' statement that appellant had been given his *Miranda* rights was an impermissible comment upon his right to remain silent. Finally, he challenges the denial of his motion for judgment of acquittal on two grounds: (1) sufficiency of the evidence; and (2) extra-territorial application of the

criminal statutes proscribing possession with intent to distribute.

We have carefully reviewed the record and find each of appellant's assignments of error to be without merit. Accordingly, we affirm.

■ Title 14 U.S.C.A. § 89(a)[2] allows the Coast Guard to stop and board a vessel on the high seas without probable cause or reasonable suspicion. As this Court has recently stated:

> This Circuit has found the Coast Guard's § 89(a) plenary authority to stop and board American vessels on the high seas to inspect for safety, documentation, and obvious customs and narcotics violations to be reasonable within the meaning of the Fourth Amendment. *United States v. Williams*, 617 F.2d 1063, 1075–78 (5th Cir. 1980) (en banc); *United States v. Erwin*, 602 F.2d 1183–84 (5th Cir. 1979) (per curiam); *United States v. Warren*, 578 F.2d 1058, 1064–65 (5th Cir. 1978) (en banc) [*cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980)].

*United States v. DeWeese*, 632 F.2d 1267, 1269 (5th Cir. 1980).

■ Appellant's contention that the Section 89(a) boarding was a pretext for an illegal search rests on the affirmative response of one of the boarding Coast Guard officers to a question asked of him at trial: whether *one* of the purposes in stopping the *Lady Sara* was to ascertain whether any marijuana was on board. The district court found that the boarding officers had two purposes in boarding and inspecting the *Lady Sara* and that although the second purpose was to look for drugs, the initial boarding for a safety and document inspection was proper under the Fourth Amend-

---

1. The *Diligence* was under a Coast Guard standard directive to board all United States registered vessels under 200 feet in length.

2. Section 89(a) empowers the Coast Guard to: make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commis-

sioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance.

14 U.S.C.A. § 89(a).

ment and Section 89(a).[3] We find no clear error in these findings of the district court.

The mere fact that the boarding officers may also suspect customs or narcotics violations does not "taint the validity of the safety and documentation inspection [under § 89(a)]." *United States v. Hillstrom*, 533 F.2d 209, 211 (5th Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977); *see United States v. Baker*, 609 F.2d 134, 139–40 (5th Cir. 1980). This Court has upheld a Section 89(a) boarding where the purpose of the stop was "to conduct a safety and document inspection *and* to look for obvious customs and narcotics violations." *United States v. Warren, supra*, 578 F.2d at 1065. *See United States v. Erwin*, 602 F.2d 1183, 1184 (5th Cir. 1979), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1014, 62 L.Ed.2d 752 (1980). *See also United States v. Peabody*, 626 F.2d 1300, 1301 (5th Cir. 1980) (rejecting contention that Section 89(a) stop and boarding were pretext to search for contraband).

The marijuana was first observed through the open forward hold by an officer who was looking for other crew members. That officer testified that he thought that he had observed, prior to boarding, four people on the *Lady Sara*, and that he was looking for an additional crew member.[4] That officer observed several large green trashbags, one of which was open and contained a green leafy substance.[5]

■ The plain view doctrine permits seizure of objects falling within the plain view of an officer who has a right to be in the position to have that view. *United States v. Worthington*, 544 F.2d 1275, 1280 (5th Cir.), *cert. denied*, 434 U.S. 817, 98 S.Ct. 55, 54 L.Ed. 72 (1977). We conclude that the discovery of the marijuana by the officer in this case was within the plain view doctrine, which provided probable cause for the subsequent search of the entire vessel.[6]

During the initial document check, while all crew members were in the wheel house, the boarding officer who had observed the marijuana returned and held a whispered conversation with the officer in charge. After both officers left and prior to their return, the remaining officer questioned the three crew members. In response to inquiries about the origin and destination of the trip, appellant Jonas stated that the ship came from Key West and was returning there after having been at sea three days. In response to a question about how the crews' (fishing) luck had been on the trip, appellant stated that "I think our luck just ran out." The other two officers then returned with some marijuana leaves, tested the leaves, and arrested the crew members and read them their *Miranda* rights.

■ In determining whether an interrogation occurred in a custodial context, thus requiring a *Miranda* warning, this Court employs a four-factor test: (1) whether probable cause to arrest had arisen; (2) whether the officer intended to hold the defendant; (3) whether the defendant believed that his freedom was significantly restricted; and (4) whether the investigation focused on the defendant. *United*

---

3. There were two suppression hearings in this case. The first hearing was held by Judge Eaton, who denied defendants' motion to suppress the evidence. The second hearing was held by Judge Gonzalez, who also presided at trial, on defendants' motion to suppress various statements. During the second hearing, Judge .Gonzalez heard arguments from counsel concerning the proper reading of Fifth Circuit law on the issue of pretextual searches and concerning the dual purposes of the Coast Guard officers in boarding the vessel. Judge Gonzalez adopted the finding made by Judge Eaton that no pretextual search occurred in this case.

4. The Coast Guard officer who was looking for additional crew members testified that it was general policy to gather all crew members together during a boarding and inspection in order to obtain personal data from them.

5. That officer told another officer of his observation *and both returned and tested the substance*, verifying that the substance was marijuana.

6. At a hearing on defendants' motion to suppress the evidence, Judge Eaton found that the plain view doctrine justified a further search of the vessel, and found that probable cause to search the vessel existed from the time of the first observance of the marijuana. Those findings were not clearly erroneous.

*States v. Warren, supra,* 578 F.2d at 1071. This Court in *Warren* noted that "the routine boarding and inspection of an American vessel on the high seas does not create a custodial situation." *Id.* After considering these factors, we conclude that the district court's finding that a custodial situation did not exist at the time appellant made his inculpatory statements was not clearly erroneous.

Concerning the first factor, the district court found at the hearing on defendants' motion to suppress certain statements that at the time of appellant's inculpatory responses probable cause to arrest appellant did not exist. After carefully reviewing the record we have concluded that probable cause to *search* the vessel arose when the marijuana was first observed in the aft hold.[7] However, probable cause to *arrest* appellant did not exist at the time of his inculpatory statements because the officers at that time were still continuing their investigation to determine whether the substance observed in the sacks was in fact marijuana.

A district court's findings of fact on a motion to suppress must be accepted by an appellate court unless clearly erroneous. *United States v. Santia-Manriquez,* 603 F.2d 575, 578 (5th Cir. 1979); *United States v. Duckett,* 583 F.2d 1309, 1313 (5th Cir. 1980). The district court's finding that probable cause to arrest appellant did not exist at the time of his inculpatory statements was not clearly erroneous.

Although the subjective interest of the questioning officer was to hold the appellant until the Section 89(a) inspection was completed, this alone was insufficient to render the interrogation coercive. *Warren, supra,* at 1071. Because the very nature of a Coast Guard boarding is restrictive in the sense that the vessel is not free to leave until the inspection is completed, "the officer must intend to go beyond the restrictions imposed by the customary and routine boarding and search" before the defendant can be said to be in custody for the purpose

of the requirement of *Miranda* warnings. *Id.* We conclude that the inquiring agent in this case did not intend to take the appellant into custody on drug charges at the time of the questioning. That officer at that time was unaware that marijuana had been discovered.

The third *Warren* factor is whether the appellant subjectively believed that his freedom was significantly restricted at the time of the questioning or, phrased another way, whether he believed at that time that "the boarding and interrogation had gone so far beyond the customary that he was imminently subject to arrest." *Id.* at 1071–72. Although appellant's response that his luck had run out may indicate that he believed that he was imminently subject to arrest, it is not clear that this belief resulted from an inspection that had gone beyond the customary or routine. Nor is it clear that there was any basis for appellant to feel coerced because at the time of his inculpatory responses appellant was aware merely that a routine inspection was underway. "To the extent the boarding and inspection are routine, the defendants should not feel coerced." *Id.* at 1071–72.

The fourth factor is whether the investigation had progressed to the accusatory stage at the time the statements were made. Although there was probable cause to search the vessel from the time the marijuana was first observed, we do not conclude that the investigation had shifted to the accusatory with respect to the questioning of appellant. The investigation for marijuana, at the time of the questioning, was limited to determining whether the substance contained in the sacks was marijuana. The accusatory stage had not yet begun where officers were merely investigating to ascertain the facts to determine whether a crime had been committed. *Id.* at 1072. Further, the questioning officer was not aware that marijuana had been discovered until the other two officers returned, which was after the questions and responses at issue. On the basis of these facts we cannot conclude that the investiga-

7. *See* note 6 *supra.*

tion had shifted to the accusatory, as it must in order to be sufficiently focused under this criterion. *Id.*

Using the four factors set forth in *Warren*, we conclude that appellant was not due a reading of his *Miranda* rights at the time he gave his inculpatory answers to the questions of the inquiring officer.

■ Appellant also contends that a witness made an improper comment on his right to remain silent. When asked what ·had occurred after the discovered marijuana was identified as such, a Government witness responded that the crew members were advised of their rights and arrested. Defense counsel objected and moved for a mistrial; the motion was denied. Defense counsel requested a curative instruction which the trial court agreed to give at the close of the case. Appellant's contention regarding this issue was answered by this Court in *United States v. Warren, supra*, 578 F.2d at 1072–73. There, this Court held that admission of testimony that the defendants were advised at the time of their arrest of their right to remain silent did not constitute a comment on the exercise of the defendants' right to remain silent and thus reversal was not required. *Id.* at 1073.[8] No reversal is required in this case.

■ Appellant challenges the illegality of a conspiracy to possess marijuana on the high seas with intent to distribute in the absence of evidence of an overt act within the territorial limitations of the United States. The Government is not required to allege or prove an overt act in order to obtain a conviction under the controlled substance conspiracy statutes. *United States v. Rodriguez*, 612 F.2d 906, 919 n.37 (5th Cir. 1980) (en banc). Where a conspiracy statute does not require proof of overt acts, the jurisdictional requirement that the proscribed acts have an effect within United States territory may be satis-

fied by evidence that the conspirators intende d their conspiracy to be consummated within United States territory. *United States v. Mann*, 615 F.2d 668, 671 (5th Cir. 1980) (conspiracy to import marijuana in violation of 21 U.S.C.A. § 963 and conspiracy to possess marijuana with intent to distribute it in violation of 21 U.S.C.A. § 846). *See United States v. Baker, supra*, 609 F.2d at 136–39.

Appellant disputes the sufficiency of the evidence that the destination of the *Lady Sara* was the United States. Here, appellant stated that the vessel had as its origin and destination Key West, Florida. Additionally, the vessel's navigational chart showed the vessel leaving Key West, then returning toward Key West but changing course although the reason for the course change was disputed in the evidence. In a similar case, where there was conflicting evidence as to the vessel's destination but the defendant had stated to members of the boarding Coast Guard crew his destination was Tampa, Florida, this Court held that the evidence was sufficient to show the defendant's intention to bring marijuana into the United States. *United States v. Robbins*, 629 F.2d 1105, 1106 (5th Cir. 1980).

The test for sufficiency of the evidence is whether reasonable minds could conclude that the evidence is inconsistent with that of any reasonable hypothesis of the defendant's innocence. *United States v. DeWeese, supra*, 632 F.2d at 1267. Viewing the evidence in the light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we conclude that the evidence was sufficient to establish that the destination of the *Lady Sara* was United States territory. There was a sufficient showing of an intended effect within the United States, thus satisfying jurisdictional requisites. Appellant's

---

8. The witness in this case made no reference to appellant's response to the *Miranda* warning. It was not brought forth at trial that appellant in fact "stood mute or claimed [his] privilege." *United States v. Warren, supra*, 578 F.2d at 1073. Even if we determined that the witness' comments were in derogation of appellant's

*Miranda* or Fourteenth Amendment due process rights, any error in this case was harmless beyond a reasonable doubt. *United States v. Espinosa-Cerpa*, 630 F.2d 328, 335 (5th Cir. 1980). *See United States v. Whitaker*, 592 F.2d 826, 830–31 (5th Cir. 1979), *cert. denied*, 444 U.S. 950, 100 S.Ct. 422, 62 L.Ed.2d 320 (1980).

motion for judgment of acquittal was properly denied.

AFFIRMED.