UNITED STATES of America, Plaintiff,

v.

George Gordon AIKENS, (01) Manuel Arcencio Angulo–Castillo, (02) Roberto Daniel Cayasso–Schellett, (03) Lay Chai Hai, (04) Anastacio Henry–Barnard, (05) Roosevelt Augustus Rodney, (06) Eusebio Samudio–Jimenez, (07) and William Graham Synder, (08), Defendants.

Nos. CR 88–359–01 to CR 88–359–08.

United States District Court, D. Hawaii.

May 12, 1988.

Daniel Bent, U.S. Atty., Hawaii, Louis A. Bracco, Asst. U.S. Atty., Honolulu, Hawaii, for the U.S.

John Ashford Thompson, Honolulu, Hawaii, for Aikens.

Samuel P. King, Jr., Honolulu, Hawaii, for Angulo–Castillo.

Benjamin B. Cassiday, III, Honolulu, Hawaii, for Cayasso–Schellett.

Richard T. Pafundi, Honolulu, Hawaii, for Hai.

William A. Harrison, Honolulu, Hawaii, for Henry–Barnard.

Michael Levine, Federal Public Defender, Honolulu, Hawaii, for Rodney.

R. Steven Geshell, Honolulu, Hawaii, for Samudio–Jimenez.

Richard A. Kawana, Honolulu, Hawaii, for Snyder.

## AMENDED MEMORANDUM AND ORDER RE MOTION TO SUPPRESS

TAKASUGI, District Judge.

### INTRODUCTION

Defendants Roosevelt Augustus Rodney ("Rodney"), Lay Chai Hai ("Lay"), and George Gordon Aikens ("Aikens") seek an order to suppress all marihuana and other evidence seized during a search of the Christina M on the basis that such search and seizure was in violation of the defendants' fourth amendment rights. Defendants William Snyder ("Snyder"), Ensebio Samudio–Jimenez ("Samudio–Jimenez") and Manuel Angulo–Castillo ("Angulo–Cas-

tillo") have joined in one or more of such motions to suppress.

Generally, defendants claim that the search of the Christina M on the high seas was improper in that such search was conducted without a warrant. Defendant Aikens further challenges the stop and boarding of the Christina M by the U.S. Coast Guard preceding the search.

The government responds by contending that (1) the defendants do not have standing to challenge the legality of the search and, (2) a warrant is not required under the circumstances of this case, because (a) the U.S. Coast Guard has plenary statutory authority to search, without a warrant, any vessels on the high seas subject to the jurisdiction of the United States, (b) the search of the vessel on the high seas was under exigent circumstances, or (c) a consent to search was given by the flag nation.

It appears that defendants Roberto Daniel Cayasso–Schellett ("Cayasso–Schellett") and Anastacio Henry–Barnard ("Henry–Barnard") are not participating in this motion to suppress.

### STATEMENT OF FACTS [1]

During an ongoing undercover investigation of marihuana trafficking/importation, approximately two weeks preceding the seizure in this case, an undercover U.S. Customs agent was solicited by a marihuana trafficker to off-load a large quantity of marihuana from a mother ship located on the high seas southeast of the Hawaiian Islands. The undercover agent agreed to provide a vessel to off-load marihuana from the mother ship and transport the substance to the Bay Area of Northern California as directed by the trafficker.

A plan was developed among members of U.S. Customs, Drug Enforcement Administration and the U.S. Coast Guard whereby a crew of federal agents, posing as marihuana traffickers, would rendezvous with the mother ship and off-load the marihuana. The plan included the U.S. Coast Guard Cutter Mallow ("Mallow") to follow the undercover off-load vessel at a safe

---

[1]. During the April 18, 1988 hearing on numerous pretrial motions filed by the defendants herein, the court invited counsel to stipulate to various facts for the purpose of this hearing only. Those facts, unless otherwise stated, are recited here.

distance and remain in radio contact with the off-load vessel.

On February 16 and 17, 1988, the undercover vessel rendezvoused with the mother ship approximately 600–800 miles southeast of the Hawaiian Islands. The mother ship was identified as the Christina M, a Panamanian coastal freighter bearing a Panamanian flag. After off-loading to a capacity of approximately 14,000 pounds of marihuana from the Christina M, the undercover agents were able to ascertain that the Panamanian freighter still had a large quantity of marihuana remaining aboard. All identification, registry and description of the Christina M were relayed by radio from the undercover crew to the Mallow.

Thereafter, the government contends that on February 18, 1988, U.S. Coast Guard officials on the Mallow sought and received permission from Panamanian officials "to the enforcement of United States law by the United States against the individuals found aboard the M/V Christina M." Christina M was not then proceeding toward the United States.

On February 19, 1988, some 48 hours after the previous off-loading operation by the undercover vessel, the Mallow closed within visual distance of the Christina M. Lt. Commander Christian Bohner ("Bohner"), Commanding Officer of the Mallow, identified the Mallow as a U.S. Coast Guard vessel and requested permission to board the Christina M. Defendant Roosevelt Augustus Rodney ("Rodney"), Captain of Christina M, initially refused Bohner's request. Bohner than indicated to Rodney that the Coast Guard had permission of the Panamanian authorities to board and search the Christina M and that he, Bohner, had "other means" to stop the Christina M. Rodney relented and the Christina M made no effort to flee.

Shortly thereafter, without a search or arrest warrant or any efforts to secure same, the Coast Guard personnel from Mallow boarded the Christina M for the express purpose of searching the freighter for marihuana. A strong odor of marihuana was immediately apparent to all members of the boarding party. They found in excess of 21,000 pounds of marihuana in the aft hold. Although no other cargo was found, other than the bales of marihuana, documents and other personal effects were found and seized from the living quarters assigned to the crew. Rodney and his crew of seven (7) men were arrested. The Mallow possessed radio equipment capable of communicating with a magistrate in Hawaii or the mainland.

The court will discuss the areas of dispute in the following sequence:

I. Applicability of the fourth amendment to searches and seizures of a foreign vessel on the high seas.

II. Standing to challenge the constitutionality of the search ("Standing").

III. Probable cause to search.

A. Statutory authority given to the Coast Guard.

1. Limitation on statutes.

B. Warrant requirement.

C. Exigent circumstances on the high seas.

D. Consent by the flag nation.

## DISCUSSION

### I. APPLICABILITY OF THE FOURTH AMENDMENT

■ Before any analysis of standing can be undertaken under *U.S. v. Rakas*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), a determination must be made as to whether the fourth amendment applies to seizures and searches of foreign vessels on the high seas. Thereafter, the inquiry becomes whether the claimant is legally entitled to claim an infringement of that constitutional right. The Fifth Circuit in *U.S. v. Cadena*, 585 F.2d 1252, 1262 (5th Cir.1978), noted that "Once we subject foreign vessels or aliens to criminal prosecution, they are entitled to the protection of all our laws, including the Fourth Amendment." The Ninth Circuit, in *U.S. v. Peterson*, 812 F.2d 486, 489, 494 (1987) *assumed* that the fourth amendment applies to the search of ships or crew on the high seas. This assumption is shared by the government and adopted by this court.

## II. STANDING

■ We now delve into the concept of standing required to challenge the search as we apply the *Rakas* standard to the defendants' legitimate expectations of privacy. Defendants bear the burden of proof in establishing this privacy expectation. *U.S. v. Sarda–Villa,* 760 F.2d 1232, 1235 (11th Cir.1985). The privacy interest to support standing is an interest in the place searched, not an interest in the items found. *Rawlings v. Kentucky,* 448 U.S. 98, 104–106, 100 S.Ct. 2556, 2561–2562, 65 L.Ed.2d 633 (1980).

■ As it relates to the marihuana seized, *U.S. v. Peterson, supra,* at 494, by dictum, noted that crew members have no expectation of privacy in the vessel's cargo hold. *U.S. v. Pinto–Mejia,* 720 F.2d 248, 255 (2d Cir.1983), *U.S. v. Ricardo,* 619 F.2d 1124, 1130 (5th Cir.) *cert. denied,* 449 U.S. 1063, 101 S.Ct. 789, 66 L.Ed.2d 607 (1980) and *U.S. v. Bent,* 707 F.2d 1190, 1192–1193 (11th Cir.1983), *cert. denied,* 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1984), appear to firmly support the *Peterson* dictum. This court holds that crew members do not have standing to contest the seizure of marihuana taken from the cargo hold. However, they most certainly possess the requisite expectation of privacy as to any items, documents, or personal effects seized from their living quarters in the Christina M. *See U.S. v. Ricardo, supra.*

■ In this analysis, Rodney's privacy expectation as Captain of the Christina M should be separately viewed. When detached from the harbor and on the waters, the captain is the focal point of leadership, control, regulation and discipline. In this regard, he is the final and ultimate authority for direction, guidance and responsibility. He remains the pulsebeat of all activities undertaken by the crew and vessel. This concept of total control is consistent with the recognition of a privacy expectation which emerges from such authority. This court, in viewing *U.S. v. Pollock,* 726 F.2d 1456, 1465 (9th Cir.1984); *U.S. v. Massell,* 823 F.2d 1503, 1507 (11th Cir.1987); *U.S. v. Garcia,* 598 F.Supp. 533, 536 (S.D. Fla.1984) and *U.S. v. Bachner,* 706 F.2d 1121 (11th Cir.1983) recognizes the interplay of exclusive control and certain privacy expectations. The so-called property entrustment theory with the defendant as bailee suggested in *U.S. v. Manbeck,* 744 F.2d 360 (4th Cir.1984) is supportive, but not as persuasive in finding the requisite expectation of privacy.

The government cites *U.S. v. Bent, supra* at 1192–1193, for the proposition that a vessel captain as well as crew members have no standing to contest a search of the hold. Although there is some dispute as to whether *U.S. v. Bent* correctly interpreted existing Fifth Circuit law in light of the *en banc* decision in *U.S. v. Williams,* 617 F.2d 1063 (5th Cir.1980), *Bent* is not the law of this Circuit.

Based upon the above discussion, it is submitted that Rodney has standing to challenge the seizure of the marihuana found in the aft hold of Christina M as well as any items, property, and personal effects taken from his living quarters.

## III. PROBABLE CAUSE TO SEARCH

■ There should be no dispute that the Coast Guard, prior to boarding the Christina M, had more than sufficient probable cause to search the vessel for marihuana. The initial recruitment in early February 1988 of an undercover customs agent to provide an off-load vessel to meet the mother ship; the actual off-loading operation on February 16 and 17, 1988, by the undercover vessel personnel, following a rendezvous with Christina M several hundred miles southeast of the Hawaiian Islands; and the observations of the undercover agents indicating that the Christina M had aboard a substantial cargo of marihuana remaining after the off-loading, are some of the facts which this court views as sufficient probable cause to search the Christina M on February 19, 1988.

### A. Statutory Authority Given to the Coast Guard

14 U.S.C. Section 89(a) provides, in pertinent part, as follows:

The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, ... officers may at any time go on board of any vessel subject to the jurisdiction ... of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel ... When from such inquiries, examination, inspection, or search it appears that a breach of the laws of the United States rendering a person liable to arrest is being, or has been committed, by any person, such person shall be arrested ... or, if it shall appear that a breach of the laws of the United States has been committed so as to render such vessel, or the merchandise ... on board ... liable for forfeiture ... such vessel or such merchandise, or both shall be seized.

■ Following the recitation of section 89(a), the government cites *U.S. v. Jonas,* 639 F.2d 200 (5th Cir.1981); *U.S. v. Peterson, supra; U.S. v. Harper,* 617 F.2d 35 (4th Cir.), *cert. denied,* 449 U.S. 887, 101 S.Ct. 243, 66 L.Ed.2d 113 (1980); and *U.S. v. Williams, supra,* as supporting the principle of law that section 89(a) authorizes the Coast Guard to constitutionally stop and board a vessel on the high seas over which the United States has jurisdiction without probable cause or reasonable suspicion. The government claims jurisdiction via the Panamanian consent. A literal reading of the statutes does not suggest the requirement of probable cause or reasonable suspicion preceding the search and/or seizure and does not make express mention of the necessity of obtaining a warrant to search and seizure.

This contention of plenary authority is correct *only* if the stop and boarding is for the *administrative purpose* of document and safety inspections. *U.S. v. Cilley,* 785 F.2d 651 (9th Cir.1985); *U.S. v. Jonas, supra; U.S. v. Williams, supra; U.S. v. Bent, supra; U.S. v. Humphrey,* 759 F.2d 743 (9th Cir.1985); *U.S. v. Piner,* 608 F.2d

358 (9th Cir.1979); *U.S. v. Ricardo, supra; U.S. v. Hilton,* 619 F.2d 127 (1st Cir.), *cert. denied,* 449 U.S. 887, 101 S.Ct. 243, 66 L.Ed.2d 113 (1980); *U.S. v. Harper, supra;* and *U.S. v. Peterson, supra; U.S. v. Postal,* 589 F.2d 862 (5th Cir.1979). Several cases do make certain distinctions pertaining to these administrative stops when carried on during the day or evening hours (*U.S. v. Cilley, supra; U.S. v. Humphrey, supra*), on domestic waters (*U.S. v. Villamonte–Marquez,* 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983)); with or without an administrative plan to limit the Coast Guard's discretion (*U.S. v. Humphrey, supra; U.S. v. Piner, supra*).

■ The government also cites 19 U.S.C. Section 1581, often referred to as the "Customs Enforcement Statute" for additional authority provided to the Coast Guard. Its provisions are not recited here in that it does not extend jurisdiction to the Coast Guard under our facts. Section 89(a) is the sole statutory source of any Coast Guard authority to board a foreign vessel beyond the twelve-mile limit. *U.S. v. Williams, supra; U.S. v. Cadena, supra;* and *U.S. v. Postal, supra.*

### 1. Limitation on Statutes

■ The defendants correctly contend that a statute and its validity depend upon the constitutionality of the legislative enactment, citing *U.S. v. Reeh,* 780 F.2d 1541, 1546 (11th Cir.1986); *U.S. v. Williams, supra* at 1077. They place great reliance upon the *en banc* decision of *U.S. v. Cadena,* 588 F.2d 100 (5th Cir.1979), where the court noted that "the ship is the sailor's home," *id.* at 101, and that "when [the government] has probable cause to search [a vessel] sufficient to support a warrant, a warrant should be obtained." *Id.* at 101.

However, the Fifth Circuit in *U.S. v. Williams, supra* at 1078, disapproved *Cadenas'* endorsement of the search warrant requirement.

This court has elected to follow the approach expressed in *U.S. v. Ramsey,* 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977) to first look for the authority to

search and seize and then apply the principles applicable to the fourth amendment. In *Ramsey,* the Supreme Court clearly noted that the existence of authority to seize and search does not necessarily establish that the Coast Guard's actions were within the bounds of the fourth amendment. *Id.* at 615, 97 S.Ct. at 1978.

The fourth amendment, in pertinent part, provides:

The right of the people to be secure in their persons, houses, and papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause ...

Thus, the fourth amendment protects unreasonable "invasion of (one's) indefeasible right of personal security, personal liberty and private property," *Boyd v. U.S.,* 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886); it protects people, not places, *Katz v. U.S.,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). The Coast Guard activity is judged by balancing the intrusion on the individual's fourth amendment interests against the promotion of legitimate governmental interest. *U.S. v. Humphrey, supra; U.S. v. Villamonte-Marquez, supra.* "The greater the intrusion, the greater must be the reason for conducting a search that results in such invasion." *U.S. v. Afanador,* 567 F.2d 1325, 1328 (5th Cir.1978). Administrative stops for document and safety inspections are generally viewed as reasonable and "minimal intrusions" when balanced against the strong governmental interest of safety concerns and proper vessel registration and documentation. *U.S. v. Humphrey, supra; U.S. v. Cilley, supra; U.S. v. Hilton, supra.* Administrative inspections without suspicion of wrongdoing are viewed as reasonable, because it is morally neutral, as opposed to a search for contraband (*U.S. v. Williams, supra*), provided it is not a pretext to search for wrongdoing (*U.S. v. Jonas, supra*).

Of course, if the law enforcement officer is lawfully aboard the vessel and sees in plain view, (*U.S. v. Green,* 671 F.2d 46 (1st Cir.) *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2962, 73 L.Ed.2d 1352 (1982); *U.S. v. Hilton, supra*), or smells contraband (*U.S. v. Cilley, supra; U.S. v. Reeh,* 780 F.2d 1541 (11th Cir.1986)), the search of the vessel may be expanded beyond the ambit of an administrative inspection. *U.S. v. Jonas, supra; U.S. v. Cilley, supra.*

■ The above discussion of administrative searches and seizures serves to highlight the constitutional limitations on intrusions where the purpose is not administrative, thereby diffusing the Coast Guard's apparent authority recited in Section 89(a). Returning to the facts of the case at bar, what then is the appropriate standard to apply, under the fourth amendment, which would govern seizures and searches aimed at discovering contraband or other criminal violations aboard a foreign vessel on the high seas? It should be noted that Christina M was searched for contraband. It was not an administrative search.

The Fifth Circuit in *U.S. v. Williams, supra,* requires at least reasonable suspicion before a seizure and search is undertaken. *Id.* at 1087. The Ninth Circuit has declined to address the standard required for the necessity of a warrant preceding the search and seizure. *U.S. v. Humphrey, supra* at 747.[2] Reasonable suspicion must be based on specific articulable facts, together with rational inferences from those facts. *U.S. v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). As in probable cause, there is no litmus test for reasonable suspicion; "[E]ach case must turn on the totality of the particular circumstances." *Id.* at 885 n. 10, 95 S.Ct. at 2582, n. 10.

*U.S. v. Williams, supra,* notes that the Constitution mandates a lesser standard than probable cause to govern searches in the high seas than on land because of several substantial differences between nautical vessels and vehicles and buildings on land. *Id.* at 1087 and 1088. They are (1) the greater difficulties in policing the ocean

---

2. By reason of this declination by the Ninth Circuit to address this issue, this court accepts the assignment to journey and journalize on the uncharted seas.

frontier, (2) the substantial limitations on one's privacy expectation on the seas due to the extensive federal and international regulation of vessels, (3) the emergence of drug smuggling as a national problem, and the technological changes which benefit smugglers more than the police, thereby adding to the problem of law enforcement, (4) the burdensome efforts required to obtain a search warrant on the high seas or to litigate "exigent circumstances," (5) the fact that the Congress that enacted the first customs statute, with provisions allowing plenary authority to Customs, also proposed the ratification of the fourth amendment, thus clearly indicating that such Congress did not intend the warrant requirement to be applicable to the seas, and (6) Rule 4(a), FRCrP, requires that a search warrant be issued by a magistrate within the district *where the property is located.*

A concurring opinion in *Williams, supra,* concurring only in the result, required sea vessels to be placed in the category of motor vehicles and supported the warrant requirement, indicating, however, the probability of finding exigent circumstances. *Id.* at 1098.

In essence, the *Williams* court has espoused the reasonable suspicion standard at least in part because of a serious drug problem confronting our nation which the enforcement agencies are unable to adequately police due to the inherent mobility of the vessel upon an arena of well-nigh uncontrollable expanse. The court is not unmindful of the enforcement problems confronting our police or the near epidemic explosion of drug violations within our nation in recent years. It is, however, legally bound to participate in the balancing of the competing rights of the individual weighed against the vital governmental interest in preventing the smuggling of illegal narcotics into the country and in apprehending those who may reasonably be suspected of violating the criminal narcotics laws. The Supreme Court, in *Almeida–Sanchez v. U.S.,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed. 2d 596 (1973) noted that "the needs of law enforcement stand in constant tension with the Constitution's protections of the indi-

vidual against certain exercise of official power. It is precisely the predictability of those pressures that counsels a resolute loyalty to Constitutional safeguards." *Id.* at 273, 93 S.Ct. at 2540. In *Carroll v. U.S.,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the court was involved in the stop and search of vehicles when the nation was confronted with law enforcement problems regarding the enforcement of Prohibition laws. The court demonstrated the required "resolute loyalty to constitutional safeguards" on that occasion.

The *Williams* court's added rationale for advocating the standard of reasonable suspicion dealt with the burden imposed on the Coast Guard to require a search warrant on the high seas as well as the burden imposed in permitting the person whose rights were allegedly infringed to litigate the issue of exigent circumstances in a court of law.

Initially, telephone search warrants could have been promptly and efficiently sought from the Coast Guard vessel. Obviously, the process to obtain the consent of the Panamanian authorities in this case was initiated by radio communications. Where is the distinction between radio communications to obtain a foreign nation's consent and such communications to obtain a magistrate's consent? Noting and addressing the claimed burden imposed in legally challenging exigent circumstances in a court of law, is the burden greater to litigate that issue as opposed to a legal challenge of reasonable suspicion under the Fifth Circuit standard? To argue, as did the *Williams* court, that such requirements will likely eviscerate the Coast Guard's ability to combat drug smuggling is simply not a "resolute loyalty to constitutional safeguards." The removal of a constitutional issue from the ambit of judicial debate or redress contributes greatly to the abolition of reasoned civility in our nation.

The history of the same 1879 Congress enacting a plenary customs statute, while simultaneously supporting the ratification of the fourth amendment, suggests Congress' intent that the sea was not then worthy of fourth amendment concern.

Since its enactment, the fourth amendment has flourished, and the courts have recognized its applicability to nautical activities far beyond the 1879 concerns of warships and duty collections. The then reasons for the rule do not justify the perpetuation of such rule when contemporary conditions, domestically and internationally, no longer support the reason. To do otherwise is to betray the original mandates of the fourth amendment which were tailored for a flexible balance of reason to justify the rule. The vessel at sea is worthy of the fourth amendment.

To determine the appropriate standard to be applied to the suspected presence of items believed to have a nexus to criminal activity,[3] a close examination should be made of the inherent features of vehicles on land and vessels at sea as they affect law enforcement.

*Carroll v. U.S., supra,* in merging vessels and vehicles in a single category, notes that "[t]he guarantee of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motorboat, wagon or automobile for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Id.* at 153, 45 S.Ct. at 285. Here, this court will discuss the similarities and differences in the features inherent in the sea vessel and the motor vehicle. They are in part as follows: (1) Land vehicles are generally operated on established routes or roads, whereas the path of the sea vessel, especially on the high seas, is trackless and not as predictable; (2) The frontiers of the ocean are almost without limitation as opposed to territorial boundaries; (3) The anonymity of the person aboard a ship and the difficulty of identification is substantially greater than that presented by the vehicle; (4) Except in the case of recreational seacraft and mobile homes, vehicles are generally not used as homes, whereas the ship has been referred to as a sailor's home, *U.S. v. Cadena, supra* at 101, where privacy expectations may be greater than those of a land vehicle; (5) The vessel may be easily described in a warrant, but it would be difficult to state when and where it will be searched, *see U.S. v. Cadena, supra;* (6) Random warrantless administrative stops of vehicles to check licenses and registration are impermissible under *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), and not so under *U.S. v. Hilton, supra* at 132, 133, for vessels under Section 89(a) because of limited alternatives available to the government at sea as to vessel identification and safety inspections, even though such authority is largely unconstrained; and (7) Both occupants of vehicles and vessels have a lesser expectation of privacy because of the range of police regulations.

A close parallel could be made between a vessel and an airplane in terms of trackless and unlimited routes and variations thereof, the anonymity of the occupant, and the difficulty in establishing the time and place of seizure. They differ in that aircrafts are not generally regarded as the occupant's home and identification and safety inspections may not be accomplished during uncontrolled flight. The methods used to seize (stop) an airship involve problems a great deal more complicated than the Coast Guard's stop of a vessel. Despite these differences and similarities, airplanes can be searched only on the basis of probable cause (or consent). *U.S. v. Coplen,* 541 F.2d 211 (9th Cir.1976). In terms of prompt, direct transportation of items, an airplane may present more of a lethal weapon for criminals than its counterpart at sea or on the land. It is submitted that

---

**3.** While probable cause to arrest and probable cause to search have been widely understood to require the same quantum of evidence, the cause to arrest concerns the guilt of the arrestee, whereas the cause to search refers to the connection of the items sought with criminal activity. *See U.S. v. Melvin,* 596 F.2d 492 (1st Circuit), *cert. denied,* 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979).

the distinctions between a land vehicle and a vessel are so nominal that a separate measure or standard for justifying a search and seizure is unnecessary. The test for the sea vessel should be the same as that for the land vehicle, to wit: probable cause.

### B. *Warrant Requirement*

■ Now that a standard of probable cause has been established for nautical searches, a discussion should ensue regarding the requirement of a warrant.

When the police have probable cause to believe that contraband is present in a vehicle, they may conduct a warrantless search of the vehicle "as thorough as a Magistrate could authorize in a warrant"; i.e., it includes closed containers and suitcases within the vehicle that may conceal the object of the search. *U.S. v. Ross*, 456 U.S. 798, 800, 102 S.Ct. 2157, 2160, 72 L.Ed. 2d 572 (1982).[4] The showing of *actual* exigency to justify a warrantless search of a vehicle is not required. *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). By analogy, the same rule should apply to vessels. Accordingly, the Coast Guard in the case at bar was not required to obtain a search warrant prior to boarding (seizure) and searching the Christina M.

■ Finally, in obedience to the rule of reasonableness under the fourth amendment, the government, under the facts of this case, must establish not only that the seizure and search was undertaken reasonably, but must further sustain the burden of reasonableness with respect to the *location* (high seas) where it was exercised.

■ In discussing this issue, the consent of the flag state is significant to establish that the seizure (stopping) and subsequent search was not a "lawless governmental intrusion." *U.S. v. Williams, supra* at 1074. *U.S. v. Ricardo, supra* at 1129, discusses the object of defendant's plan having a *consequence* within the United States. *Id.* at 1128. *U.S. v. Postal,*

*supra,* discusses the nexus between the defendant's conduct and the United States as "intended territorial effects." *Id.* at 886, n. 39. The direction of travel of the Christina M prior to the boarding does not suggest reasonableness in that it was not traveling in the direction of the United States. *See U.S. v. Williams, supra.* However, a sufficient nexus, i.e., reasonableness, was established with the United States when the Christina M participated with the undercover vessel in the off-loading several days prior to the boarding of the Christina M where the destination of the loaded undercover vessel was ordered to be delivered to the Bay Area in Northern California.

### C. *Exigent Circumstances on the High Seas*

■ Since the court required probable cause, but excused the warrant requirement as it applied to Christina M, no additional discussion of exigent circumstances is deemed necessary. Suffice it to say that, if *actual* exigent circumstances were required under our facts, this court finds that the government failed to establish actual exigency in that Christina M's location was precisely known to the Mallow after probable cause had emerged and sufficiently in advance of the seizure and search to have enabled the Mallow to secure a warrant by telephone.

### D. *Consent by Flag Nation*

■ *U.S. v. Williams* seems to suggest that, even if the Coast Guard was not statutorily authorized to seize and search under Section 89(a), the Coast Guard's action would have been authorized by Panamanian consent. *Id.* at 1077.

A vessel on the high seas is under the exclusive jurisdiction of the nation under whose flag she sails. *Green, supra.*

In *Green* and *Williams*, the consent by the foreign nation was, in essence, "to

---

**4.** The *Ross* court distinguished, however, between probable cause to believe that contraband is somewhere in the vehicle and probable cause to believe that contraband is located in a particular container within the vehicle. In the latter situation, the location of the container in the vehicle is pure happenstance, and the automobile exception in *Carroll, supra,* is inapplicable to justify the search of the container.

board and search" the foreign vessel. Here, Panama consented "to the enforcement of United States law by the United States ..." Accordingly, the consent in *Williams* and *Green* was much more expansive. Here, the justification for the search was required to be supported, if at all, by United States law, not Panama's consent. It was therefore incumbent upon the United States to develop its own probable cause, under its own law, which it did successfully, rather than to urge Panama's consent in lieu thereof.

## CONCLUSION

Captain Rodney has standing to challenge the marihuana seizure from the Christina M and the items, documents and personal effects, if any, taken from his office or quarters.

The crew members, defendants Lay, Aikens, Snyder, Jimenez, and Angulo–Castillo have standing to challenge the items, documents and personal effects seized from their private quarters.

The statutory authority (Section 89(a)) granted to the Coast Guard is limited by the fourth amendment. The standard to search a vessel on the high seas within the jurisdiction of the United States is probable cause and a warrant is not required. Aside from this *per se* rule, there were not actual exigent circumstances which prevented the obtaining of a search warrant. The consent from the Panamanian authorities did not authorize a seizure and/or search, but merely permitted the application of United States laws to one of its ships. Probable cause was established.

The motions to suppress are respectfully denied.